PEOPLE v REED

Docket No. 102651. Argued October 10, 1996 (Calendar No. 16). Decided December 30, 1996.

Ferandal S. Reed was convicted by a jury in the Detroit Recorder's Court, Beverley Anne Jasper, J., of first-degree felony murder and assault with intent to commit armed robbery. The Court of Appeals, DOCTOROFF, C.J., and WAHLS and MURPHY, JJ., ordered remand to provide the defendant an opportunity to move for a new trial on the ground that he had been denied effective assistance of counsel (Docket No. 145406). Following a *Ginther* hearing, the trial court denied the motion. The Court of Appeals, CONNOR and J. F. KOWALSKI, JJ. (WEAVER, P.J., concurring in the result only), reversed in an unpublished opinion per curiam, holding that the trial court had an obligation to give a cautionary instruction regarding accomplice testimony, and that the failure of defense counsel to request the instruction constituted ineffective assistance of counsel. The people appeal.

In an opinion by Justice MALLETT, joined by Chief Justice BRICKLEY, and Justices BOYLE and RILEY, the Supreme Court *held*:

A cautionary instruction on accomplice testimony should not be given when the testimony in dispute came from a codefendant in a joint trial who would have been prejudiced by such an instruction.

1. While a trial judge may have an obligation to give a cautionary instruction sua sponte on accomplice testimony in certain situations, in this case, the trial judge properly could not have given a cautionary instruction because a codefendant took the stand in his own defense during a joint trial. Any cautionary instruction would have asked the jury to view the codefendant's testimony with suspicion and would have prejudiced his defense, constituting error requiring reversal.

2. The failure of the defendant's trial attorney to request a cautionary instruction did not constitute ineffective assistance of counsel. The defendant did not show that counsel made errors so serious that he was not functioning as the counsel guaranteed the defendant by the Sixth Amendment, nor did he show that deficient performance prejudiced him so as to deprive him of a fair trial. Even if a cautionary instruction had been requested, the court

properly could not have granted it because it would have undermined the codefendant's defense. No Michigan authority has held that such an instruction can be given in this situation.

Reversed in part and remanded.

Justice LEVIN, joined by Justice CAVANAGH, dissenting, stated that the potential prejudicial effect of the jury instruction with respect to Servant of an accomplice instruction concerning his testimony does not reduce the prejudicial unfairness to Reed in denying him the benefit of such a cautionary instruction.

Codefendant Servant, facing a mandatory nonparolable life sentence, was under enormous pressure to save himself by shifting the blame to someone else. That pressure was at least as great as the pressure on a codefendant who has the safety net of charge or sentence concessions granted by a prosecutor in exchange for his testimony. There is, thus, no less need for a cautionary instruction simply because Servant was a codefendant and had not been offered concessions in exchange for his testimony by the prosecutor. The unfairness to Reed and the separate unfairness to Servant had such an instruction been given, could have been avoided by separate trials or possibly by separate juries. The unfairness was exacerbated at the joint trial by reading to the jury the extrajudicial hearsay statement of Servant accusing Reed of instigating the slaying of the victim and by reading Reed's extrajudicial statement accusing Servant of being the shooter.

Leave to appeal in *Servant* and leave to cross appeal in *Reed* should be granted, and disposition of *Reed* deferred until decision in *Servant* and decision on Reed's cross appeal.

Justice WEAVER took no part in the decision of this case.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief, Research, Training and Appeals, and *Joseph A. Puleo*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Susan M. Meinberg*) for the defendant.

MALLETT, J. A jury convicted defendant of first-degree felony murder and assault with intent to commit armed robbery. The Court of Appeals reversed the convictions, holding that the trial court had an obliga-

tion to give a cautionary instruction sua sponte regarding accomplice testimony pursuant to *People v McCoy*, 392 Mich 231, 240; 220 NW2d 456 (1974). The Court further held that the failure of defendant's attorney to request the instruction constituted ineffective assistance of counsel. We reverse and hold in this case that a cautionary instruction on accomplice testimony should not have been given when the testimony in dispute came from a codefendant in a joint trial who would have been prejudiced by such an instruction. Consequently, the trial court did not err by not giving the instruction, and trial counsel was not ineffective in not requesting it.

I

Isaac Robbins, Jr., was shot fatally at the home of the defendant's parents. In a joint trial,[1] defendant and codefendant, Willie O. Servant, were found guilty of first-degree felony murder and assault with intent to commit armed robbery. MCL 750.316, 750.89; MSA 28.548, 28.284.

The prosecution's theory of the case was that the defendant and Mr. Servant lured Mr. Robbins to the home on the pretext that Mr. Robbins would be able to make a cocaine sale. Relying in part on a statement that Mr. Servant gave the police, the prosecution attempted to show that the parties intended to rob and shoot Mr. Robbins when he arrived.

The defendant did not testify. Defendant had, however, earlier provided the police with a statement that

---

[1] The defendant was sixteen years old when Mr. Robbins was killed. This case was prosecuted in the Recorder's Court of the City of Detroit pursuant to the so-called "automatic waiver" provision. MCL 600.606, 725.10a(1)(c); MSA 27A.606, 27.3950(1)(1)(c).

the prosecution introduced at trial. According to this statement, the defendant was serving as a middleman in a drug transaction between Mr. Robbins and a buyer known only as Vince. When Mr. Robbins arrived with the drugs, the defendant asked Mr. Servant to telephone Vince. Mr. Servant left the room to make the phone call. On his return, he began firing shots at Mr. Robbins. After Mr. Robbins fled the house, mortally wounded, the defendant demanded to know why Mr. Servant had shot him. In his statement to the police, the defendant acknowledged that he and Mr. Servant had discussed robbing Mr. Robbins.

Mr. Servant testified in his own defense, and his testimony differed from defendant's statement. According to Mr. Servant, he and defendant did discuss robbing Mr. Robbins, but Mr. Servant had decided against participating in the crime. Knowing that a robbery would take place and that it would involve a shooting, but not wanting to be part of those events, Mr. Servant went to his girlfriend's house for about an hour. He returned to the home of the defendant's parents just in time to hear a shot and see the victim leave the house. A moment later, the defendant and Roy Johnson came out. Mr. Johnson pointed a gun at Mr. Servant and told him to go into the house. Mr. Johnson then threatened Mr. Servant, warning him that if he mentioned the incident to anyone, he would be killed. Mr. Servant said that he falsely confessed to the police out of fear of Mr. Johnson.

A police witness also provided to the jury a statement that Mr. Servant had earlier given the police. In this statement, Mr. Servant admitted that he and defendant planned the robbery and the shooting. Mr.

Servant also told the police that he was the shooter but that the defendant was the instigator and leader.

Following the defendant's conviction and sentence, he filed an appeal of right in the Court of Appeals. Later, he persuaded the Court to remand this case to the trial court to allow him to move for a new trial on the ground that he had been denied the effective assistance of counsel.[2]

At the *Ginther*[3] hearing, one of the issues concerned the trial counsel's failure to request a cautionary instruction regarding accomplice testimony.[4] The

---

[2] Unpublished order of the Court of Appeals, entered April 29, 1993 (Docket No. 145406).

[3] *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973).

[4] Neither the parties nor the Court of Appeals has specified a standard instruction or provided language for the omitted instruction. We assume the dispute concerns the failure to give an instruction such as CJI2d 5.6. This instruction reads:

> (1) You should examine an accomplice's testimony closely and be very careful about accepting it.
>
> (2) You may think about whether the accomplice's testimony is supported by other evidence, because then it may be more reliable. However, there is nothing wrong with the prosecutor's using an accomplice as a witness. You may convict the defendant based only on an accomplice's testimony if you believe the testimony and it proves the defendant's guilt beyond a reasonable doubt.
>
> (3) When you decide whether you believe an accomplice, consider the following:
>
> (a) Was the accomplice's testimony falsely slanted to make the defendant seem guilty because of the accomplice's own interests, biases, or for some other reason?
>
> (b) Has the accomplice been offered a reward or been promised anything that might lead [him/her] to give false testimony? [*State what the evidence has shown. Enumerate or define reward.*]
>
> (c) Has the accomplice been promised that [he/she] will not be prosecuted, or promised a lighter sentence or allowed to plead guilty to a less serious charge? If so, could this have influenced [his/her] testimony?
>
> [(d) Does the accomplice have a criminal record?]
>
> (4) In general, you should consider an accomplice's testimony more cautiously than you would that of an ordinary witness. You

defendant's appellate counsel argued to the trial court that the instruction was necessary because Mr. Servant's testimony inculpated the defendant.

In response, the defendant's trial counsel testified that he had not asked for a cautionary instruction because Mr. Servant was not a witness for the prosecution. Further, counsel knew that the court would be instructing the jury that it must consider the guilt or innocence of each defendant separately.

The trial court found no ineffective assistance of counsel, and denied the motion for new trial.

The Court of Appeals reversed the defendant's convictions.[5] The Court first said that the defendant's "conviction and sentence for both felony murder and the underlying assault felony constitutes double jeopardy."[6] However, the Court of Appeals said that the double jeopardy issue was moot in light of its decision to reverse on an instructional ground.

Addressing the failure of trial counsel to request a cautionary instruction regarding accomplice testimony, as well as the trial court's failure to give the instruction sua sponte, the Court of Appeals stated:

> We find that the failure of defendant Reed's attorney to request the accomplice instruction constituted ineffective assistance of counsel. Our review of the record reveals that the failure to make this request was not a matter of trial strategy, and that defendant Reed was unfairly prejudiced

---

should be sure you have examined it closely before you base a conviction on it. [Emphasis and bracketed material in original.]

[5] *People v Servant* (and *Reed*), unpublished opinion per curiam of the Court of Appeals, issued January 11, 1995 (Docket Nos. 145405, 145406), reh den *People v Servant*, unpublished order of the Court of Appeals, entered May 11, 1995 (Docket No. 145405).

[6] The prosecutor does not appeal this determination.

as a result. [*People v Harris*, 201 Mich App 147, 154; 505 NW2d 889 (1993)]; *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991). Moreover, the trial court should have given the instruction sua sponte. As this Court iterated in *People v Tucker*, 181 Mich App 246, 256; 448 NW2d 811 (1989), "[w]hen the omitted instruction pertains to the need to examine an accomplice's testimony with caution, the failure to give the instruction sua sponte requires reversal if the issue of the defendant's guilt is 'closely drawn.'" See *People v McCoy*, 392 Mich 231, 240; 220 NW2d 456 (1974). We believe that the instant case was "closely drawn," in that it presented a credibility contest between the two defendants. *Id.*; *Tucker, supra,* 256. Under the circumstances, the trial court had an independent obligation to give the jury an instruction as to accomplices. [*People v Servant*, unpublished opinion per curiam, issued January 11, 1995 (Docket Nos. 145405, 145406), slip op at 2.]

We granted the prosecutor's application for leave to appeal and ordered the defendant's application for leave to appeal as cross-appellant to be held in abeyance.

II

In *People v McCoy, supra,* this Court created a rule that a trial judge may have an obligation to give a cautionary instruction sua sponte on accomplice testimony in certain situations. We stated:

> For cases tried after the publication of this opinion, it will be deemed reversible error . . . to fail upon request to give a cautionary instruction concerning accomplice testimony and, if the issue is closely drawn, it may be reversible error to fail to give such a cautionary instruction even in the absence of a request to charge. [392 Mich 240.]

This rule is motivated by the inherent weakness of accomplice testimony that is presented by the prosecution. The problem with such testimony is twofold.

First, actual or implied threats or promises of leniency by the prosecutor will often induce an accomplice to fabricate testimony. Second, a jury may rely on otherwise incredible accomplice testimony simply because it is presented by the prosecutor.[7] As the Court noted in *McCoy*, " 'a long history of human frailty and governmental overreaching for conviction has justified distrust in accomplice testimony.' "[8]

*McCoy* requires a court to give a cautionary instruction on accomplice testimony when requested, but it does not require automatic reversal when a case is "closely drawn" and a judge fails to give such an instruction sua sponte.[9] Rather, *McCoy* states that such a failure to instruct *may* be error requiring reversal. This Court has never established standards for evaluating when the failure to instruct sua sponte *requires* reversal. In *People v Atkins*, 397 Mich 163; 243 NW2d 292 (1976), for example, we declined to extend *McCoy* to a case involving an addict-informer. One of the reasons was that defense counsel had thoroughly explored the addict-informer's motivation to lie on cross-examination. *Id.* at 168, 171-172. Certainly, it would make little sense to require a judge to caution a jury sua sponte on a witness' motivation to lie when defense counsel has thoroughly explored the witness' motivations. Rather, *McCoy* stands for the

---

[7] This problem was starkly presented in *McCoy*, in which the prosecutor overtly vouched for the credibility of the accomplice. *Id.* at 242.

[8] 392 Mich 236, quoting 30 Am Jur 2d, Evidence, § 1148, p 323.

[9] See *People v Grant*, 445 Mich 535; 520 NW2d 123 (1994). In *Grant*, the trial court failed to give a preliminary instruction before an offer of testimony on insanity, as required by MCL 768.29a(1); MSA 28.1052(1)(1). We held that this failure to instruct was not error requiring automatic reversal. *Grant* is consistent with *McCoy* in that both opinions decline to create a broad rule of automatic reversal when a court fails to give an appropriate instruction sua sponte.

proposition that a judge should give a cautionary instruction on accomplice testimony sua sponte when potential problems with an accomplice's credibility have not been plainly presented to the jury.

In this case, the problems with codefendant Servant's credibility were plainly apparent to the jury. At trial, codefendant testified that Roy Johnson had been the shooter. A police witness, however, provided the jury a statement that the codefendant had given the police. In this statement, codefendant admitted participating in the robbery and shooting the victim, but stated that defendant was the instigator. The jury was also informed that the codefendant had originally told the police that a man named Ant, driving a white BMW, shot the victim. Both the prosecutor and Reed's counsel explored these inconsistencies thoroughly when cross-examining the codefendant.

Also, the problems with the accomplice's testimony in *McCoy* are not present here. Unlike the accomplice in *McCoy*, Mr. Servant was not a prosecution witness. Rather, he was a codefendant who voluntarily testified in his own defense. Because Mr. Servant was on trial for first-degree murder, he obviously was not the beneficiary of any favorable deals from the prosecution.[10] Thus, the rationale for the obligation to instruct sua sponte does not apply in this case.

Most importantly, the trial court properly could not have given a cautionary instruction such as CJI2d 5.6. Here, Mr. Servant took the stand in his own defense.

---

[10] Favorable treatment by the prosecution certainly affects the credibility of accomplice testimony, and the language of a cautionary instruction such as CJI2d 5.6 is designed to bring this to the attention of the jury. We do not hold, however, that favorable treatment by the prosecution is a prerequisite to a cautionary instruction on accomplice testimony.

Any cautionary instruction on accomplice testimony would have asked the jury to view Mr. Servant's testimony with suspicion and would have prejudiced his defense. Such an instruction in this case would certainly have been error requiring reversal.[11] See *People v Hull*, 86 Mich 449, 463-465; 49 NW 288 (1891); *People v Beck*, 96 Mich App 633, 637; 293 NW2d 657 (1980).

III

The Court of Appeals also found that the failure of the defendant's trial attorney to request a cautionary instruction constituted ineffective assistance of counsel. We disagree.

The standard for determining whether a defendant has been denied effective assistance of counsel is stated in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984), and was adopted by this Court in *People v Pickens*, 446 Mich 298; 521 NW2d 797 (1994). In *Strickland*, the United States Supreme Court explained:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance

---

[11] Faced with similar facts, at least five other states have reached this same conclusion. *People v Sawyer*, 256 Cal App 2d 66; 63 Cal Rptr 749 (1967), *McGowen v State*, 221 Tenn 442; 427 SW2d 555 (1968), *Taylor v State*, 403 So 2d 585 (Fla App, 1981), *State v Land*, 14 Kan App 2d 515; 794 P2d 668 (1990), and *Selman v State*, 807 SW2d 310 (Tex Crim App, 1991).

prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. [*Id.* at 687.]

In the present case, defendant has not satisfied either portion of the *Strickland* standard. First, defendant was not prejudiced. Even if defense counsel had requested a cautionary instruction, the court properly could not have granted the request. As discussed above, any cautionary instruction on accomplice testimony would have undermined Mr. Servant's defense and would have been error requiring reversal.

Second, defense counsel's performance was not deficient. At the *Ginther* hearing, defendant's trial counsel testified that he did not request a cautionary instruction on accomplice liability because the codefendant was not testifying on behalf of the prosecution. Before the Court of Appeals decision in this case, no Michigan authority had held that such an instruction can be given in this situation. Certainly, defense counsel's performance cannot be deemed deficient for failing to advance a novel legal argument.[12] See *Engle v Isaac*, 456 US 107, 130-134; 102 S Ct 1558; 71 L Ed 2d 783 (1982).

---

[12] In addition, defense counsel's failure to request a cautionary instruction on accomplice testimony may have been a tactical decision. A review of the record shows that Mr. Servant's trial testimony was *less* inculpatory to defendant than his previous statement to the police. At trial, Mr. Servant testified that Mr. Johnson, not defendant, was the aggressive party. In his police statement, however, he stated that defendant was the instigator. Any cautionary instruction would have undermined testimony that may have assisted the defense.

IV

For these reasons, we reverse in part the judgment of the Court of Appeals, and remand this case to the Court of Appeals for consideration of the issues properly raised by the defendant but not addressed in the opinion of the Court of Appeals.[13]

BRICKLEY, C.J., and BOYLE and RILEY, JJ., concurred with MALLETT, J.

LEVIN, J. (*dissenting*). The majority states persuasively that it would have been prejudicially unfair and error requiring reversal with respect to defendant, Ferandal Shabazz Reed's codefendant, Willie O. Servant, to have instructed the jury at their joint trial that, because Servant was charged as an accomplice, it should examine his testimony "closely and be very careful about accepting it"; to think about whether his testimony is corroborated by other evidence; to consider, when deciding whether to believe Servant, whether he gave "testimony falsely slanted . . . because of [Servant's] own interest"; and in general to consider Servant's testimony "more cautiously."[1]

Thus, I am inclined to agree with the majority's decision insofar as it reverses the Court of Appeals on the narrow question whether the trial court should have instructed sua sponte on accomplice testimony.

The potential prejudicial effect as to Servant of an accomplice instruction concerning his testimony does

---

[13] The defendant's application for leave to appeal as cross-appellant is denied, because we are not persuaded that the issues raised in his application should be addressed before the conclusion of the proceedings on remand in the Court of Appeals.

[1] The quoted words are taken from CJI2d 5.6. See majority, n 4 for text.

not reduce the prejudicial unfairness to Reed in denying him the benefit of such a cautionary instruction.

Codefendant Servant, facing a mandatory nonparolable life sentence, was under enormous pressure to save himself by shifting the blame to someone else. That pressure was at least as great as the pressure on a codefendant who has the safety net of charge or sentence concessions granted by a prosecutor in exchange for his testimony. There is, thus, no less need for a cautionary instruction simply because Servant was a codefendant and had not been offered concessions in exchange for his testimony by the prosecutor.

I

The unfairness to Reed resulting from the failure to caution the jury on the dangers of accomplice testimony, and the separate unfairness to Servant had such an instruction been given, could have been avoided by separate trials or possibly by separate juries.

Both Reed and Servant sought separate trials. The Court of Appeals, on first consideration of Servant's appeal, ruled that a separate trial should have been granted, but, on remand, another panel ruled differently. Servant's application for leave to appeal is currently pending before this Court.

The Court of Appeals did not reach the separate trial issue in the instant case because it ruled, pursuant to *People v McCoy*, 392 Mich 231; 220 NW2d 456 (1974), that an accomplice instruction should have been given. Reed's cross appeal regarding the issue of

the failure to sever and other issues is pending resolution on the *McCoy* issue.[2]

II

In *People v Hana,* 447 Mich 325; 524 NW2d 682 (1994), the Court considered the separate trials issue in the context of potential conflicting and antagonistic testimony and defenses of codefendants at a joint trial. The focus was not on evidence probative of the defendant's guilt admissible only against a codefendant. See *id.* at 362.

III

The unfairness of the joint trials—which the majority holds precluded a cautionary instruction on accomplice testimony because that would have prejudiced Servant—was exacerbated at the joint trial by reading to the jury the extrajudicial hearsay statement of Servant accusing Reed of instigating the slaying of the victim, Isaac Robbins, Jr., and by reading Reed's extrajudicial statement accusing Servant of being the shooter.

Servant's and Reed's extrajudicial statements were not admissible under the hearsay exception for admissions against penal interest.[3] In *People v Poole,* 444 Mich 151, 161; 506 NW2d 505 (1993), this Court held that a statement against penal interest may be admissible, although not against the penal interest of

---

[2] No cross appeal was necessary to argue on other grounds in support of the decision of the Court of Appeals ordering a new trial, especially since the Court of Appeals did not rule on the other grounds advanced for reversal of the conviction. This Court should consider alternative arguments urged by Reed in support of affirmance of the decision of the Court of Appeals before reversing the Court of Appeals.

[3] The statements were introduced in the prosecution's case in chief.

the declarant, under limited circumstances. Such circumstances would not include situations where the declarant is responding to police interrogation and attempts to mitigate the degree of his own involvement by shifting responsibility to another person,

- as did Servant when he acknowledged that he was the shooter but sought to minimize his responsibility by asserting that Reed instigated the shooting by demanding that Servant shoot Robbins without further delay;

- as did Reed, when he acknowledged that he participated in the attempted robbery, but sought to minimize his responsibility by asserting that he reproached Servant for shooting Robbins.[4]

IV

The central, possibly the only, issue at the joint trial was who actually shot Robbins. Both Reed and Servant admitted their participation in the attempted robbery. But under *People v Aaron*, 409 Mich 672; 299 NW2d 304 (1980), their participation in the attempted robbery did not necessarily make the killing murder. Since *Aaron*, the jury must be instructed that it cannot infer intent to kill or malice (intent to inflict great bodily harm or wanton or wilful disregard of the likelihood that the natural tendency of the defendant's behavior is to cause death or great bodily harm), from participation in a robbery, or attempted robbery alone.

---

[4] Reed claimed that he was not in the room with Servant and Robbins when he heard the shots and then returned to the room.

Under *Aaron*, the question of guilt or innocence of murder turned on whether Reed or Servant, or both, acted alone or in a concert of action, to kill Robbins, or, alternatively, whether the culpability of one or both (if Johnson was the shooter) was limited to participation in the attempted robbery.

### A

On that central issue, Reed's statement that Servant was the shooter, exculpating Reed from involvement in the murder, destroyed Servant's possible ability to persuade the jury to accept Servant's trial testimony that Johnson was the shooter, and Servant's explanation of why he had falsely accepted responsibility for the shooting.[5]

### B

There was no direct evidence that Reed was involved in the killing other than Servant's statement that Reed had urgently demanded that Servant shoot Robbins without further delay.[6]

The prosecutor in effect acknowledged the importance to the prosecution's case against Reed, of Servant's statement accusing Reed of being the instigator of the killing by stressing that accusation in his clos-

---

[5] Reed did not testify. See *Bruton v United States*, 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968), and *Cruz v New York*, 481 US 186; 107 S Ct 1714; 95 L Ed 2d 162 (1987).

[6] Servant's testimony that Reed followed Johnson when he left Reed's parents' home does not show that Reed was involved in a concert of action with Johnson to shoot Robbins. It may show only that Reed may have been present when Johnson assertedly shot Robbins. Be that as it may, the prosecutor's theory was that Servant shot Robbins, not that Johnson shot Robbins.

ing arguments. The error in admitting Servant's statement at a joint trial against Reed was not harmless.[7]

V

Reed's cross appeal should be granted, and disposition of this case deferred until this Court, after full briefing and opportunity for argument, decides whether Servant's statement was admissible against Reed at a joint trial, and whether Reed's statement against Servant, inadmissible under *Poole* and *Bruton v United States*, 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968), against Servant, was harmless error, and

---

[7] To be sure, Servant testified that when he and Reed planned to rob Robbins, Reed said that it would be necessary to kill Robbins so he could not come back at them. Servant claimed that he then left Reed's home to avoid being involved in killing Robbins, and that he returned some time later to the Reed home, heard shots, saw Robbins run out after having been shot, followed by Roy (Stinky) Johnson and Reed. That testimony does indeed support inferences that Reed may have been involved in killing Robbins. But it is not direct evidence (in contrast with Servant's extrajudicial accusation) that he, in fact, was involved. Johnson, according to Servant, not Reed, had the .25 caliber gun in his hand, and was about to shoot Servant when Reed prevailed on Johnson not to do so.

The prosecutor's theory was that Servant, not Johnson, was the shooter. Johnson was not charged. The jury convicted Servant and, thus, rejected his testimony that he left the Reed home when Reed said that it would be necessary to kill Robbins.

I recognize that the jury was entitled to believe that Reed did say that it would be necessary to kill Robbins, but, absent Servant's extrajudicial statement to the police that Reed told him to "do it, do it" (i.e., kill Robbins), the jury was more likely to reject all Servant's testimony as it was to believe part of it. (In convicting Servant of first-degree murder, the jury apparently rejected his testimony.)

The extrajudicial statement accusing Reed of being the instigator in hollering "do it, do it" was highly prejudicial bootstrapping, and not harmless, whatever the level of confidence an appellate court must have that error is harmless before it can appropriately rule that error had no effect on the jury's verdict.

whether Reed and Servant were entitled to separate trials.[8]

VI

I would, therefore, grant leave to appeal in *Servant*, and grant Reed's cross appeal, and defer disposition of this case until decision in *Servant* and decision on Reed's cross appeal.

CAVANAGH, J., concurred with LEVIN, J.

WEAVER, J., took no part in the decision of this case.

---

[8] If there are errors of preservation by trial or appellate counsel, Reed and Servant should not on that basis be deprived of a fair trial conducted in accordance with the rules of law.