# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DIMITRI BERNARD ROBINSON,

Defendant-Appellant.

UNPUBLISHED
December 13, 2018

Nos. 337755; 337928
Wayne Circuit Court
LC Nos. 16-005942-01-FH;
16-005941-01-FC

Before:  M. J. KELLY, P.J., and METER and O'BRIEN, JJ.

PER CURIAM.

In these consolidated appeals stemming from a single trial, defendant appeals as of right his jury trial convictions for second-degree home invasion, MCL 750.110a(3), larceny in a building, MCL 750.360, first-degree murder, MCL 750.316, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1]  Defendant was sentenced to life imprisonment without parole for first-degree murder, 19 months to 15 years' imprisonment for second-degree home invasion, three months to four years' imprisonment for larceny in a building, and two years' imprisonment for felony-firearm.  We affirm.

In the years before the relevant events in this case, defendant was in a dating relationship with Marsha Williams.  They had two children together.  After that relationship ended, Williams began dating the victim.  On or around May 1, 2016, defendant attempted to force his way inside Williams's house to see his children, but the victim prevented defendant from doing so.  Later, on May 17, 2016, defendant confronted Williams at the children's school and wanted to see their children.  Williams refused, and defendant grabbed Williams's arm and twisted it.  That evening, when Williams and the children arrived home, Williams saw that someone had broken into their home through her bedroom window.  There was blood in several places throughout the home,

---

[1] None of the issues raised on appeal concern defendant's convictions for second-degree home invasion and larceny in a building in Docket No. 337755.  Those convictions relate to events that happened over a week before the events that led to defendant's murder and felony-firearm convictions.  Defendant's claims of error only relate to his murder and felony-firearm convictions, and he fails to explain what impact, if any, the alleged errors may have had on his other convictions.

multiple items were missing, and Williams noticed a plastic bag with blood on it outside her bedroom window. When Williams confronted defendant about the break-in, he denied any involvement.

The next day, on May 18, 2016, defendant sent Williams a photograph of a cut on his arm, which defendant attributed to an injury he incurred when someone robbed him. Williams did not believe defendant and called the police. That same day, an officer came to Williams's house, observed the scene, and took the plastic bag into evidence for forensic analysis.

On May 25, 2016, the victim changed his cellphone number because defendant called him multiple times. The next day, after the victim had changed his number, defendant somehow discovered the victim's new number and texted the victim that he was going to kill him. On May 27, 2016, the victim picked Williams's children up from school at 3:45 p.m. and brought them back to Williams's house. At 4:15 p.m., the victim and Williams's son rode bicycles to the victim's father's home, which was roughly four blocks away. Later, while the victim and Williams's son were returning to Williams's home, a man wearing a mask jumped out of some bushes and shot the victim.

Officers that responded to the scene found four bullet casings. Detective Lieutenant Bradley Cox, one of the officers that responded to the scene, spoke with Williams, who gave the detective defendant's name as a possible suspect. Cox went back to the police station to search the database for defendant. At or around 7:45 p.m. that day, defendant called Cox at the police station to ask why the police were looking for him. According to Cox, there was no reason why defendant would have known that police were looking for him. Cox told defendant that defendant was a person of interest in a crime—but did not specify what the crime was—and that he wished to speak with defendant. Defendant told Cox that he would call back later, and did so twice that evening. During each call, defendant declined Cox's invitation to come to the police station for questioning. At the end of the third and final call, defendant told Cox that he would get back to him because "[h]e was going to seek a lawyer."

According to Cox, because defendant refused to come to the police station, police were forced to search for him. Cox used the number that defendant called him from to get a court order to ping defendant's cellphone. This allowed Cox to trace defendant's real-time location. Cox gave defendant's phone carrier defendant's number, and the phone carrier told Cox that defendant was near 19400 Beland Street in Detroit, Michigan.

Officers went to that address and saw defendant walking outside. The officers verbally identified defendant and then detained him while they awaited a warrant to search 19400 Beland Street. After obtaining a warrant, the officers searched the home and found a piece of mail addressed to defendant—establishing his residency—and a loaded 9mm handgun. Forensics determined that the casings recovered at the scene of the shooting were fired from the 9mm handgun officers recovered at defendant's home.

Cox arrived at 19400 Beland Street while officers were securing the house before the search. Cox approached defendant, and defendant asked Cox if he was the officer defendant spoke with earlier. Cox said that he was, but advised defendant to "seek a lawyer." According to Cox, defendant responded that he wanted to speak with Cox and clear things up. Cox

transported defendant to the police station, where he advised defendant of his *Miranda*[2] rights. Defendant eventually confessed to shooting the victim.

Before trial, defendant moved to suppress his statements to police, claiming that he invoked his right to counsel when talking to Cox on the phone, and so the interrogation of defendant without counsel violated defendant's Fifth Amendment rights. After a hearing on the motion—during which Cox and other detectives testified about the events surrounding defendant's contact with police, defendant's arrest, and defendant's interrogation—the trial court denied defendant's motion because defendant was not in custody when he requested counsel. Defendant was eventually convicted as previously stated, and this appeal followed.

Defendant first argues that the trial court erred by denying his motion to suppress because the police impermissibly reinitiated contact with him after he invoked his constitutional right to an attorney during his phone call with Cox. We disagree. When reviewing a decision on a motion to suppress, we review the trial court's factual findings for clear error. *People v Tanner*, 496 Mich 199, 206; 853 NW2d 653 (2014). To the extent the decision involves an interpretation of law or application of a constitutional standard, we review the decision de novo. *Id*.

Both the United States and Michigan Constitutions guarantee that no person shall be compelled to be a witness against himself. US Const Am V; Const 1963, art 1 § 17. In *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966), the United States Supreme Court held that the Fifth and Fourteenth Amendments' prohibition against compelled self-incrimination require that a custodial interrogation be preceded by advice to the accused that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." An accused's right to the presence of counsel during a "custodial interrogation is a corollary of the right against compelled self-incrimination, because the presence of counsel at a custodial interrogation is one way in which to 'insure that statements made in the government-established atmosphere are not the product of compulsion.' " *People v Elliott*, 494 Mich 292, 301; 833 NW2d 284 (2013), quoting *Miranda*, 384 US at 466.

In *Edwards v Arizona*, 451 US 477; 101 S Ct 1880; 68 L Ed 2d 378 (1981), the United States Supreme Court created "additional safeguards" for when an accused invokes his right to the presence of counsel during a custodial interrogation:

> [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights . . . . [H]aving expressed his desire to deal with the police only through counsel, [he] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. [*Edwards*, 451 US at 484-485.]

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

Here, defendant asserts that officers violated *Edwards* by subjecting defendant to a custodial interrogation after defendant invoked his right to an attorney during his phone call with Cox. In making this argument, defendant mistakenly asserts that the trial court erred by focusing on whether defendant was in custody at the time he said that he wanted to speak with an attorney. As explained by the United States Supreme Court, "[i]n every case involving *Edwards*," the reviewing court "must determine whether the suspect *was in custody when he requested counsel* and when he later made the statements he seeks to suppress." *Maryland v Shatzer*, 559 US 98, 111; 130 S Ct 1213; 175 L Ed 2d 1045 (2010) (emphasis added). Thus, the trial court properly focused on whether defendant was in custody before applying *Edwards*.

Whether an accused was in custody depends on the totality of the circumstances, and focuses on the objective circumstances of the interrogation. *People v Coomer*, 245 Mich App 206, 219; 627 NW2d 612 (2001). The reviewing court asks whether a reasonable person in the defendant's situation would believe that he or she was free to leave and "whether the relevant environment present[ed] the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Howes v Fields*, 565 US 499, 509; 132 S Ct 1181; 182 L Ed 2d 17 (2012).

Viewing the totality of the circumstances, defendant was not in custody when he told Cox that he wished to speak with an attorney before talking to the police. Defendant was not under arrest or in any way constrained by authorities when he spoke with Cox over the phone. Defendant was free to end the conversation whenever he pleased. Indeed, defendant did so multiple times. And not only did defendant repeatedly end his conversations with Cox, but defendant made the initial contact with Cox, and then continued to reinitiate contact with Cox until defendant decided he wanted to speak to an attorney. On these facts, we conclude that, at the time that defendant told Cox that he wanted to speak with an attorney, defendant was not subject to an inherently coercive environment, and a reasonable person in defendant's position would believe that he or she was free to leave. In short, defendant was not in custody when he told Cox that he wished to speak with an attorney. And because defendant was not in custody when he told Cox that he wished to speak to an attorney, his rights under *Edwards* were not violated, and the trial court did not otherwise err by admitting defendant's confession at trial.

Defendant next argues that defense counsel at trial was ineffective for not raising certain other arguments in his motion to suppress. Defendant did not move for a new trial or evidentiary hearing in the trial court, so this issue is not preserved. *People v Sabin*, 242 Mich App 656, 658; 620 NW2d 19 (2000). This Court's review of unpreserved claims of ineffective assistance of counsel is limited to facts apparent on the record. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's constitutional determinations are reviewed de novo while its factual determinations are reviewed for clear error. *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012).

"In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). This Court presumes that counsel was

effective, and a defendant bears the heavy burden of proving otherwise. *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009).

Defendant's first ineffective assistance claim is premised on his assertion that a search within the meaning of the Fourth Amendment occurs when the police ping a criminal suspect's cellphone to locate his real-time location. Defendant argues that, because this constitutes a search, the police violated his constitutional rights by pinging his cellphone without first obtaining a search warrant, and counsel was ineffective for not raising this argument at trial.

It is not settled law, however, that pinging a cellphone for a suspect's real-time location constitutes a search within the meaning of the Fourth Amendment.[3] Indeed, defendant concedes as much on appeal. "[D]efense counsel's performance cannot be deemed deficient for failing to advance a novel legal argument." *People v Reed*, 453 Mich 685, 695; 556 NW2d 858 (1996); see also *People v Crews*, 299 Mich App 381, 400-401; 829 NW2d 898 (2013) (relying on *Reed* and rejecting the defendant's argument that defense counsel's failure to object to the scoring of his prior record variable 1 "on the basis of unclear, undefined statutory language without any Michigan caselaw to provide guidance on the issue" constituted a performance that fell below an objective standard of reasonableness).

Given that there is no binding precedent to support defendant's argument that his Fourth Amendment rights were violated when police found defendant's location by pinging his cellphone, defense counsel's failure to object on this ground cannot be considered ineffective assistance of counsel. See *Reed*, 453 Mich at 695. And because there is no caselaw to establish that defendant's assertion—that pinging his cellphone was a search within the meaning of the Fourth Amendment—has merit, defendant cannot establish that he was prejudiced by defense counsel's failure to raise the argument.

Defendant next argues that he was denied the effective assistance of counsel because defense counsel at trial failed to argue that officers illegally arrested defendant while they waited for the warrant to search defendant's house. According to defendant, because his arrest was illegal, the evidence found during the subsequent search of his house was fruit of the poisonous tree.

The record is clear that officers arrested defendant when they found him wandering around his neighborhood before they searched his house, but the officers' reasons for arresting defendant were never developed at trial. But at the hearing on defendant's motion to suppress, an officer explained that defendant was detained because he had several traffic warrants. And in Cox's search warrant application, he similarly states that defendant was detained because he

---

[3] We recognize that recently, in *Carpenter v United States*, 518 US ___, ___; 138 S Ct 2206, 2217-2219; 201 L Ed 2d 507 (2018), the United States Supreme Court ruled that the police must obtain a search warrant supported by probable cause before obtaining a lengthy location history based on a suspect's cellphone location. But the *Carpenter* Court expressly refused to address "matters not before" it, including "real-time [cell-site location information]," *id*. at 2220, which is the type of alleged search at issue here.

-5-

"had several traffic warrants." Defendant does not dispute that the officers' detaining him for traffic warrants was valid. Instead, defendant argues that the stated reason is a lie, and that the arrest was actually a pretext "to investigate the murder charges."

In support of his argument, defendant relies on *People v Martin*, 94 Mich App 649, 652-653; 290 NW2d 48 (1980), where this Court ruled that, despite that officers could have properly arrested the defendant for assaulting one of the officers, the officers did not have probable cause to arrest the defendant because the officers said that they arrested the defendant "for 'investigation of murder,' " which is not a crime. Here, unlike in *Martin*, the officers that arrested defendant never stated that they arrested him to investigate the murder; the only evidence in the record is that officers arrested defendant because he had several traffic warrants. Defendant "has the burden of establishing the factual predicate for his claim," *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999), and without some evidence that the officers arrested defendant as a pretext to investigate the murder, defendant failed to establish the factual basis for this ineffective assistance claim. Because defendant does not dispute that it was proper for officers to arrest defendant based on his outstanding traffic warrants, he cannot show that his arrest was illegal. And defense counsel cannot be deemed ineffective for not raising this "meritless or futile" objection. *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015).

Affirmed.

/s/ Michael J. Kelly
/s/ Patrick M. Meter
/s/ Colleen A. O'Brien