*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTRON DARNELL JENNINGS,

        Defendant-Appellant.

UNPUBLISHED
September 19, 2019

No. 344100
Kalamazoo Circuit Court
LC No. 2017-000252-FH

Before: SWARTZLE, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Antron Jennings, appeals as of right his jury trial conviction of resisting or obstructing a police officer, MCL 750.81d(1). Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

This case arises from Jennings's failure to comply with a police officer's commands. It is undisputed that Jennings was a passenger in a vehicle driven by Darius Williams. Jennings testified that Williams was in a liquor store parking lot when a police officer knocked on the window and told him that he was "not supposed to drive." Williams then sped away, eventually parking the vehicle near his house where he and Jennings then began to drink vodka. After a while a police patrol located the vehicle, confirmed that it was the same one that had fled the liquor store, and pulled up behind it with the overhead lights activated. Williams got out of the vehicle, leaving Jennings in the passenger seat. Jennings recounted that Williams ran from the police, first trying to get into his house and then running around it twice before being tackled to the ground.

Jennings stated that he exited the vehicle and walked closer because he could not see what was happening. He added that he wanted to inform the police that Williams had mental health issues. Jennings testified that as he approached the scene, two officers were "wrestling" with Williams on the ground. He stated that one of the officers on the ground, Eric Shaffer, told him to get back in the vehicle, but he did not because he wanted to know if the officer had heard him. He stated that Shaffer responded by telling him to get back in the vehicle again. Jennings

admitted that he did not do so. According to Jennings, Shaffer then approached him, and when Shaffer was next to him, Jennings took his cellular phone out to record because he felt the police were using excessive force. He testified that an officer took his phone. He also testified that before handcuffing him, Shaffer told him to take his hands out of his pocket and turn around. Jennings admitted that it took two police officers to handcuff him.

Shaffer's testimony was similar. He stated that he observed two occupants in the vehicle when he arrived on the scene. When Williams fled the vehicle on foot, Shaffer pursued him, chasing him around a house two times before taking him to the ground. While Shaffer and another officer were attempting to handcuff Williams, Shaffer saw Jennings exit the vehicle and walk toward them. Jennings approach was "highly aggressive," and he was angry and confrontational. One officer stayed on the ground to detain Williams, and Shafer moved to intercept Jennings so the officers could maintain "scene safety." Shaffer explained that Jennings was not just a bystander; he was someone who had been a passenger in Williams's vehicle, and Williams was actively resisting arrest. Shaffer did not know what Jennings intended to do. He ordered Jennings to get back into the vehicle multiple times, but Jennings refused. According to Shaffer, Jennings got in his face. Shaffer told Jennings to turn around, and he asked him to identify himself. Jennings said he would not, so Shaffer told him to turn around and that he was under arrest. Because Jennings would not turn around, Shaffer grabbed him and tried to turn him around to handcuff him. Jennings, however, would not put his hands behind his back and was "tensing his arms." Shaffer explained that he was only able to get Jennings under control when a second officer assisted him.

## II. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

Jennings argues that his defense lawyer was ineffective for failing to object to the court's omission of an element of the offense and for failing to request jury instructions explaining that a command is only lawful it if does not unnecessarily infringe a person's First Amendment rights. Because Jennings failed to move for a new trial or an evidentiary hearing, this Court's review of his claim is limited to errors apparent on the record. See *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

### B. ANALYSIS

In order to establish that his or her defense lawyer provided ineffective assistance, a defendant must show that his or her lawyer's performance "was below an objective standard of reasonableness under prevailing professional norms" and that, absent the lawyer's deficient performance, there is "a reasonable probability" that "the outcome of the proceedings would have been different." *Id*. It is presumed that the defense lawyer provided effective assistance, "and the defendant bears a heavy burden of proving otherwise." *People v Solmonson,* 261 Mich App 657, 663; 683 NW2d 761 (2004).

Jennings first contends that his lawyer's performance was deficient because he did not object to the trial court's omission of an element of resisting or obstructing a police officer. A criminal defendant has the right to have the jury properly instructed regarding the elements of the

offense of resisting or obstructing a police officer. *People v Quinn*, 305 Mich App 484, 493; 853 NW2d 383 (2014). The elements of resisting or obstructing a police officer require the prosecution to prove: "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." *People v Vandenberg*, 307 Mich App 57, 68; 859 NW2d 229 (2014) (quotation marks and citation omitted). Here, the prosecution's theory was that Jennings obstructed the police officer by failing to comply with a lawful command. The "knowing failure to comply with a lawful command" constitutes obstruction of a police officer. MCL 750.81d(7)(a). In addition, the prosecution must also show that "the officers' actions were lawful." *Vandenberg*, 307 Mich App at 68. Because the lawfulness of the officers' actions is an element of the offense, it must be presented as a factual question for the jury. *Id*. at 68-69; see also *Quinn*, 305 Mich App at 494; *People v Moreno*, 491 Mich 38; 814 NW2d 624 (2012).

The trial court instructed the jury that it should convict Jennings of resisting or obstructing a police officer if it found beyond a reasonable doubt:

> First, that the defendant resisted, obstructed, or opposed a police officer.
>
> Obstruct includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command. The defendant must have actually resisted by what he said or did, but physical violence is not necessary.
>
> Second, that the defendant knew or had reason to know that the person resisted, obstructed, or opposed was a police officer performing his duties at that time.

Jennings takes issue with the fact that the trial court did not separately instruct the jury that the prosecution had to prove beyond a reasonable doubt that the officers' actions were lawful. He directs this Court to the Michigan Standard Jury instructions. At the time of his trial, the standard jury instructions were effectively identical to the instructions given at his trial. However, in June 2018, the instructions were amended to expressly provide that the prosecution must establish three elements. With regard to the third element, the jury instructions now require the prosecution to prove "*that the complainant gave the defendant a lawful command*, was making a lawful arrest, or was otherwise performing a lawful act." M Crim JI 13.1 (emphasis added). The use note for the directions adds that "[t]he court should provide detailed legal instructions regarding the applicable law governing the officer's legal authority to act." M Crim JI 13.1, n 4. Yet, Jennings's reliance on the amended jury instructions is misplaced because, as it relates to the lawfulness of the police command, the jury in this case was actually instructed that it had to find beyond a reasonable doubt that the command was lawful before they could find that Jennings obstructed a police officer. Because the jury was properly instructed that it had to find the police command was lawful, Jennings cannot establish that his lawyer's performance was deficient. See *Sabin (On Second Remand)*, 242 Mich at 659.

Jennings next asserts that his defense lawyer was ineffective because he did not request a jury instruction stating that a command is not lawful if it infringes on a defendant's First Amendment right to record the police. Decisions regarding which jury instructions to request are generally considered part of trial strategy, and this Court will not second-guess a defense lawyer's trial strategy "with the benefit of hindsight." *People v Dunigan*, 299 Mich App 579, 584, 590; 831 NW2d 243 (2013). "The fact that defense counsel's strategy was unsuccessful does not render him ineffective." *People v Solloway*, 316 Mich App 174, 190; 891 NW2d 255 (2016).

Here, Jennings asserts that he has a constitutional right to record the police, and he suggests that Shaffer's order to get back into the vehicle infringed on that right so the command was not lawful. Generally, however, a police officer may lawfully command a passenger to stay in a vehicle in order to maintain control over the scene even after the driver has been arrested. See *People v Corr*, 287 Mich App 499, 507-508; 788 NW2d 860 (2010) (finding that the officers' commands to a passenger "to stay in the vehicle . . . to be lawful."). We discern no meaningful distinction between a command for a passenger to stay in a vehicle and a command to return to the vehicle. In both instances, the officers have the same interest in maintaining control over the scene. A defense lawyer is not ineffective for failing to raise a novel legal argument. *People v Reed*, 453 Mich 685, 695; 556 NW2d 858 (1996). Accordingly, under these circumstances, Jennings cannot establish that his lawyer's performance was deficient.

In addition, even if Jennings's lawyer should have requested such jury instruction, Jennings cannot show that there is a reasonable probability that the outcome of the trial would be different because he cannot show that the police violated the First Amendment by ordering him to return to the vehicle. As explained by the United States Court of Appeals for the First Circuit, although there is a constitutional right to film "government officials engaged in their duties in a public place, including officers performing their responsibilities," that right is not unlimited and it "may be subject to reasonable time, place, and manner restrictions." *Glik v Cunniffe*, 655 F3d 78, 82, 84 (CA 1, 2011). Thus, having a cellular phone and recording or to attempting to record the police does not automatically give an individual carte blanche to ignore police commands aimed at securing or maintaining scene safety. See *State v Russo*, 141 Hawai'i 181, 194; 407 P3d 137 (2017) (stating that "that the constitutionally-guaranteed right to photograph or film the activities of police officers in public may be limited by time, place, and manner restrictions so long as a reasonable officer would conclude that the individual's action is interfering or about to interfere with the officer's performance of his or her duties" and noting that "[a]n order that a reasonable officer would conclude is necessary to ensure the safety of all persons involved in a police stop—including the safety of the officer—would be a reasonable restriction . . . ."); see also *ACLU of Illinois v Alvarez*, 679 F3d 583, 607 (CA 7, 2012) (noting that reasonable orders to maintain safety and control, which have incidental effects on an individual's exercise of the First Amendment right to record, may be permissible); *Gericke v Begin*, 753 F3d 1, 7 (CA 1, 2014) (recognizing that safety concerns might justify a command to bystanders to disperse notwithstanding that the command might "incidentally impact an individual's exercise of the First Amendment right to film.").

On appeal, Jennings asserts that if the jury believed his testimony that he intended to film the police and if it had been instructed that Jennings had a right to speak to the police and film them, then "the jury may have reached a different conclusion." We disagree. Under the

circumstances of this case, there is not a reasonable probability that a jury would conclude the police commands violated Jennings's constitutional rights. Jennings ignored multiple commands to get back in the vehicle *before* he attempted to film the police with his cellular phone. Further, the officers' testimony makes clear that Jennings exited Williams's vehicle and approached in an aggressive, confrontational manner, which was why he was commanded to return to the vehicle. Jennings was not a random bystander attempting to see what was happening; he was an associate of a man who had twice fled from the police and was actively resisting arrest. The scene was not secure, especially in light of the fact that Williams was still struggling with the officers when Shaffer gave the first command for Jennings to return to the vehicle. For the foregoing reasons, Jennings's lawyer was not ineffective for failing to request a jury instruction that a command is unlawful if it infringes on a constitutional right.

Affirmed.

/s/ Brock A. Swartzle
/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly