*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 1, 2024

Plaintiff-Appellee,

v

No. 362817
Kalamazoo Circuit Court
LC No. 2019-002123-FC

WILLIAM PAUL JONES,

Defendant-Appellant.

Before: CAMERON , P.J., and M. J. KELLY and YATES, JJ.

PER CURIAM.

Defendant, William Jones, appeals by right his jury convictions of first-degree murder, MCL 750.316(a); murder during the commission of a felony (felony murder), MCL 750.316(b); first-degree home invasion, MCL 750.110a(2); three counts of assault with the intent to murder (AWIM), MCL 750.83; unlawful imprisonment, MCL 750.349b; carrying or possessing a firearm while ineligible to do so (felon-in-possession of firearm), MCL 750.224f(1); carrying or possessing ammunition while ineligible to do so (felon-in-possession of ammo), MCL 750.224f(3); and nine counts of carrying or possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] For the reasons stated herein, we affirm.

## I. BASIC FACTS

During the night of December 1, 2019, Jones was acutely intoxicated on methamphetamine and suffering from paranoia. Jones was riding as a passenger in a vehicle operated by a friend when he fired several shots from a handgun through the vehicle's windshield at passing cars. He told an officer that he fired because he thought the cars were following him. Jones eventually jumped from the vehicle and ran through a wooded area to a home occupied by Christopher Neal, Haley Coe, and their minor daughter.

---

[1] The jury found Jones not guilty of one count of resisting or obstructing a police officer, MCL 750.81d.

Jones entered the home without permission and terrorized Neal, Coe, and their daughter by pointing and waving two handguns at them. Jones felt that his life was in danger and asked Neal to call 911. Jones and Coe also called 911. Coe eventually went upstairs with her daughter, but Jones took Neal hostage and forced him into a bedroom on the ground floor. Throughout the incident, Jones was acting strangely.

Police officers responded, but Jones did not believe that they were officers. After hearing a gunshot emanating from the downstairs bedroom where Jones was holding Neal hostage, the officers forced entry into the home. Once inside, the officers tried to deescalate the situation by speaking with Jones through the door to the bedroom. They were able to confirm that Neal was still alive at that time. Jones continued to believe that the officers were not police officers, and he threatened to kill Neal if they entered the bedroom. After speaking with the officers for several minutes, Jones began firing at the officers through the walls and door. Jones's shots struck three officers. Jones apparently took off his jacket, shoes, and shirt, and then jumped through a glass window in an effort to escape. Officers arrested Jones outside the window.

Inside the bedroom the officers discovered that Neal had died of a single gunshot wound to the back of his head. Evidence established that Jones fired 23 shots that night and that the officers did not fire any shots.

## II. DIMINISHED-CAPACITY DEFENSE

On appeal, Jones makes two related arguments. He argues that, although it was determined that he was not legally insane during the events at issue, he had mental-health issues arising from his long-term use of methamphetamine that negated his ability to form the specific intent to commit the crimes. In his view, he should have been able to present a diminished-capacity defense premised on his long-term use of methamphetamine notwithstanding our Supreme Court's decision in *People v Carpenter*, 464 Mich 223; 627 NW2d 276 (2001), which he argues was wrongly decided. Citing *People v Tyson*, 511 Mich 1080; 992 NW2d 293 (2023), Jones maintains that at least three justices from our Supreme Court have similarly concluded that *Carpenter* was wrongly decided. He urges this Court to do the same. He further maintains that his lawyer provided ineffective assistance by failing to hire and call an expert who could have testified about his diminished capacity.

## A. PRESERVATION

Jones did not ask for permission to assert a diminished-capacity defense in the trial court, but he did argue to the jury that he lacked the requisite intent under the totality of the circumstances. Jones first asserted that he had a right to present a diminished-capacity defense in his motion for a new trial. To the extent that Jones argues on appeal that the trial court abused its discretion when it denied his motion for a new trial premised on his right to present a diminished-capacity defense, he preserved that claim of error by moving for a new trial in the trial court and asserting that ground for relief. See *People v Clark*, 330 Mich App 392, 414; 948 NW2d 604 (2019). To the extent that Jones claims that the trial court erred when it did not allow him to present a diminished-capacity defense, he did not preserve that claim of error by raising it before or during trial. See *People v Abraham*, 256 Mich App 265, 274; 662 NW2d 836 (2003). Finally, Jones did not have to take any special steps to preserve a claim of ineffective assistance which is

premised on errors that are apparent on the record alone. See *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000).

## B. STANDARDS OF REVIEW

This Court reviews a trial court's decision on a motion for a new trial for an abuse of discretion. *Abraham*, 256 Mich App at 269. A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *Clark*, 330 Mich App at 415. This Court reviews de novo the proper application of the law and constitutional standards. *Id*. To obtain relief for an unpreserved claim of error, Jones must demonstrate that the trial court plainly erred and that the error affected his substantial rights. See *id*. at 414.

To establish his claim of ineffective assistance, Jones must show that his lawyer's decision to forgo a diminished-capacity defense fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for the unprofessional conduct, the result of the lower court proceeding would have been different. See *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). In evaluating whether a lawyer's performance fell within the range of competent representation, this Court presumes that the lawyer rendered effective assistance, and this Court must affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Vaughn*, 491 Mich at 670.

## C. ANALYSIS

In *Carpenter*, 464 Mich at 230-241, our Supreme Court examined the statutory scheme governing a defendant's right to assert an insanity defense. The Court related that the Legislature placed the burden of proving the defense on the defendant and required the defendant to meet certain procedural requirements before he or she could present the defense. *Id*. at 231. Our Supreme Court concluded that the Legislature's decision to enact a comprehensive statutory scheme governing the defense of insanity amounted to a conclusive determination as to when "mental incapacity can serve as a basis for relieving one from criminal responsibility." *Id*. at 237. The Court noted in particular that the Legislature had already addressed what should happen when a person was mentally ill during the commission of a crime, but not legally insane; such persons, the Court explained, could be found guilty but mentally ill and sentenced in the same manner as any other defendant. *Id*. The Court concluded that that provision "demonstrated [the Legislature's] policy choice that evidence of mental capacity short of insanity cannot be used to avoid or reduce criminal responsibility by negating specific intent." *Id*. The Court, therefore, rejected the continued viability of the diminished-capacity defense. *Id*. at 238-239. The Court also determined that precluding a diminished-capacity defense did not violate due process. *Id*. at 240.

Jones did not attempt to present an insanity defense at trial, and he could not present evidence that he had mental-health problems short of insanity to negate the specific-intent element of the charges against him under *Carpenter*. He could have presented evidence of his mental-health problems short of insanity for a purpose other than to negate specific intent, see *People v Yost*, 278 Mich App 341, 355-356; 749 NW2d 753 (2008), but he did not do so. He also could not negate the specific-intent element of his charges by presenting evidence of his voluntary intoxication on methamphetamine. See MCL 768.21a(2); MCL 768.37(1).

On appeal, Jones asks this Court to reverse and remand for a new trial to allow him to present a diminished-capacity defense. This Court, however, is bound by the rule of stare decisis to follow the decisions of our Supreme Court. *Duncan v Michigan*, 300 Mich App 176, 193; 832 NW2d 761 (2013). Only the Supreme Court has the authority to overrule its previous decisions. *Paige v Sterling Hts*, 476 Mich 495, 524; 720 NW2d 219 (2006). Consequently, we conclude that the trial court did not err—plainly or otherwise—when it directly or impliedly prevented Jones from presenting a diminished-capacity defense to negate the specific-intent element of the charges against him.

Jones also suggests that his lawyer should have obtained an expert to evaluate him and present evidence that his habitual use of methamphetamine had altered his ability to make decisions. It is evident that such testimony would only be relevant to show that Jones lacked the ability to form the specific intent to commit the charges at issue in his trial. Under *Carpenter*, Jones would only be able to present evidence to challenge whether he had the mental capacity to form the specific intent if he met the definition of legal insanity. The record evidence showed that Jones did not meet the statutory definition of legal insanity at the time that he committed the acts at issue. For that reason, his lawyer could reasonably conclude that the defense of insanity was not available to Jones. See *Vaughn*, 491 Mich at 670. Moreover, because our Supreme Court abolished the diminished-capacity defense, Jones's lawyer cannot be faulted for failing to hire an expert and attempting to present a defense that contradicted Michigan law. See *People v Leffew*, 508 Mich 625, 638; 975 NW2d 896 (2022) (stating that a defense lawyer is not ineffective for failing to advance a meritless argument); *People v Reed*, 453 Mich 685, 695; 556 NW2d 858 (1996) (stating that defense counsel cannot be faulted for failing to advance a legal argument that had not been recognized by any Michigan authority). For these reasons, Jones's claim of ineffective assistance also fails.

## III. STANDARD 4 BRIEF

In a brief filed under Administrative Order 2004-6, Standard 4, Jones argues that the trial court violated his constitutional right to due process by proceeding with trial. He contends that he sent the trial court numerous letters detailing the failing of his defense lawyer. Specifically, he informed the court that his lawyer led him astray, lied to him numerous times, and was "absolutely" unprepared for trial. He contends that by denying the motion to withdraw despite knowing that Jones's lawyer was ineffective, the trial court violated his due process rights. We disagree.

Trial began on June 9, 2022. After Jones refused to change out of his orange prison attire, the trial court stated that it was going to give him an opportunity to change. Jones responded that he would not change and that he was "not willing to proceed" with the trial. He noted that he had written "numerous letters in the last four and a half months" informing the court of what he perceived to be shortcomings of his defense lawyer. He complained that he had tried to "get rid of his" lawyer because she had done "nothing" on his case and because he was being ignored by her. In response, his lawyer expressed that her relationship with Jones had "irretrievably broken down" during a telephone call the previous day. She did not request to be removed. Moreover, Jones did not request a new lawyer. Rather, he simply stated that he was unwilling to proceed with his trial.

The court stated that it would not remove Jones's lawyer and delay the trial further. The court reasoned that the trial had already been adjourned multiple times and that it was unwilling to adjourn it again. Further, the court noted that two months earlier Jones had requested that his lawyer be removed. The complaints raised in the letters were addressed at that time. The court denied that motion. According to the court's recollection, Jones agreed at that time that he was "okay" with his lawyer continuing to represent him. Jones does not challenge the April decision. Finally, the trial court noted that it had over 100 potential jurors waiting, that the prosecution was ready, and that the victims had already been waiting since 2019 for a resolution of the matter. Given the record in this case, we conclude that the trial court did not abuse its discretion by denying Jones's untimely request that his lawyer be removed and his trial delayed. See *People v Strickland*, 293 Mich App 393, 399; 810 NW2d 660 (2011) (stating that a court does not abuse its discretion by denying an untimely request to substitute counsel raised the day of trial because a substitution of counsel at that time would have unreasonably delayed the judicial process).

Jones maintains that his trial lawyer provided ineffective assistance because she was unprepared and had done "nothing" for his defense. At the outset, Jones suggests that the prosecution bears the burden of proving by clear and convincing evidence that his trial lawyer was prepared and competent to represent him. The burden, however, is not on the prosecution. Rather, effective assistance is presumed, and it is the defendant's burden to prove that his lawyer provided ineffective assistance. *People v Solmonson,* 261 Mich App 657, 663; 683 NW2d 761 (2004). Moreover, as it relates to a claim of ineffective assistance, the defendant bears the burden of establishing the factual predicate for his or her claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Jones has failed to do so.

Jones's trial lawyer was the third lawyer to represent him on this matter. It appears that all three of his lawyers are part of the same law firm. The reason why his first lawyer was replaced is unclear. However, one of Jones's letters to the court included allegations that his second lawyer had essentially done "nothing" on his case and, as a result, he asked that she be removed and be replaced by two new lawyers. Thereafter, Jones's trial lawyer entered her appearance on the record. Jones's trial lawyer filed a successful motion to adjourn the trial to allow for enough time to prepare for trial and because a potential expert witness for the defense would be unavailable at the scheduled time. Thus, although an expert was not ultimately called on behalf of the defense, the record clearly shows that Jones's lawyer investigated the possibility of an expert witness and was preparing for trial. Further, based upon Jones's letters, which detail numerous contacts between him and his lawyer, it is clear that she was not simply ignoring him and his case. Moreover, although Jones complains that no witnesses were called on his behalf, he has not directed this Court to any evidence during the trial that demonstrated that his lawyer was unprepared. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Thus, to the extent that he argues that his lawyer provided him with ineffective assistance, we conclude that he has not established that he is not entitled to relief.

Affirmed.

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Christopher P. Yates