*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 12, 2025
9:48 AM

Plaintiff-Appellee,

v

No. 365268
Oakland Circuit Court
LC No. 2021-277487-FC

GARO CHARLES BOYAJIAN,

Defendant-Appellant.

Before: REDFORD, P.J., and RIORDAN and BAZZI, JJ.

PER CURIAM.

Defendant appeals as of right his convictions of two counts of first-degree criminal sexual conduct (CSC), MCL 750.520b(1)(b)(*ii*) (sexual penetration of person who is at least 13 but less than 16 years of age and who is related to the defendant). We affirm defendant's convictions and sentences, but remand to the trial court for correction of the presentence investigation report (PSIR).

## I. FACTS AND PROCEEDINGS

Defendant was convicted of two counts of first-degree CSC against his 15-year-old daughter, GB. Defendant's family consisted of himself, his wife, Michelle, GB, their older son, and two younger daughters. Defendant held a medical degree, but he did not complete his residency, and he was not a licensed physician during the time periods relevant to this case. During these periods, Michelle financially supported the family through her employment, and defendant was a full-time stay-at-home parent.

On worknights, defendant usually did not sleep with Michelle because his snoring kept her awake. Defendant often slept with GB in her twin bed. He began this practice when GB was in elementary school, and continued until December 2020. GB testified at trial that she wanted him to sleep with her when she was younger because she was afraid to be alone in the dark. As she grew older, she enjoyed watching television with him from her bed.

In 2020, GB's school held remote classes because of the Covid-19 pandemic. In November 2020, the school counselor sent students a "wellness" survey to find how students were

-1-

coping with the pandemic conditions. GB responded "yes" to questions regarding whether she had considered self-harm and whether she felt unsafe in her home. As a follow-up to the survey, the counselor e-mailed defendant and Michelle to inform them of GB's answers. GB sent the counselor a response stating that the problem that made her feel unsafe was no longer happening.

At that time, GB posted a sign on her bedroom door stating that men were not allowed in her room at night. Defendant stopped coming to her bedroom after she posted the sign. On December 8, 2020, GB asked Michelle permission to use the social media platform Snapchat. Michelle told GB that she was concerned about the effect of social media on GB's mental health. GB showed Michelle the response she sent to her counselor to assure Michelle that her mental health was not in danger. Instead, Michelle became suspicious and questioned GB about why she had felt unsafe in the home. During their discussion, GB disclosed that defendant frequently sexually assaulted her when they slept together. On these occasions, GB woke up and discovered that defendant was penetrating her vaginally or anally with his penis. The assaults began when she was 13 years old. However, GB believed that defendant was asleep when this happened.

Michelle confronted defendant with GB's disclosures. Defendant appeared stunned by GB's disclosures. Michelle reported GB's accusations to the Ferndale Police Department and Children's Protective Services (CPS). Defendant arranged to stay at the home of Michelle's friends in Royal Oak. On December 10, 2020, Michelle informed the police investigators that defendant made statements that his family would be better off if he died. Two officers from the Ferndale Police Department went to the Royal Oak house to conduct a welfare check. Defendant refused to answer the door. A series of events ensued in which the Ferndale officers, officers from the Royal Oak Police Department, and a special weapons and tactics (SWAT) team entered the house, where defendant had barricaded himself in the basement with a gun, alcohol, and pills. The standoff ended when defendant lost consciousness from the drugs and alcohol.

Defendant was charged with two counts of first-degree CSC, sexual penetration of a family member between the ages of 13 and 16 years old, one count involving vaginal penetration, the other anal penetration. Defendant's first trial was held from July 28, 2022 to August 3, 2022. The jury was unable to reach a verdict, and the trial court declared a mistrial. Defendant's second trial was held from December 6, 2022 to December 9, 2022. The jury found him guilty of both counts.

At trial, the two primary factual issues were whether GB's testimony was credible, and whether defendant's conduct during the police standoff reflected consciousness of guilt. The prosecutor's theory was that defendant groomed GB by normalizing sleeping in her bed even past the age when she was afraid of the dark. The prosecutor opined that defendant took advantage of GB's heavy sleeping habits to initiate sexual intercourse while pretending to be asleep himself. The prosecutor maintained that defendant's suicide attempt and conduct during the standoff reflected his consciousness of guilt.

The defense theory was that Michelle influenced GB to fabricate the allegations. Defendant opined that Michelle was hostile toward defendant because he did not contribute to the family's financial support or effectively function as a stay-at-home parent. Tensions in the family increased while the family was forced to stay at home together during the pandemic lockdown. According to defendant, Michelle was unwilling to divorce defendant because she opposed divorce for religious reasons and because she did not want defendant to take half of the marital estate.

Defendant argued that Michelle influenced GB to fabricate allegations of sexual abuse, which would give her an excuse to divorce him. Defendant attacked Michelle's credibility by emphasizing that she falsely informed the police and CPS that defendant made inculpatory statements when she confronted him with GB's accusations. The jury found defendant guilty of both counts. This Court denied defendant's motion for a remand for a *Ginther*[1] hearing. *People v Boyajian*, unpublished order of the Court of Appeals, entered March 14, 2024 (Docket No. 365268).

## II. DOUBLE JEOPARDY

Defendant argues that his right of protection from double jeopardy was violated when he was retried after the mistrial. Defendant failed to preserve this issue by objecting to the retrial in the trial court. *People v Meshell*, 265 Mich App 616, 628; 696 NW2d 754 (2005). Unpreserved constitutional issues are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 762-765; 597 NW2d 130 (1999). "Plain error exists when '1) [an] error . . . occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights.' " *People v Beck*, 510 Mich 1, 27; 987 NW2d 1 (2022), quoting *Carines*, 460 Mich at 763 (alterations in original). If these prongs are satisfied, reversal is not warranted unless "the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Beck*, 510 Mich at 27 (cleaned up).

The United States and Michigan constitutions preclude placing an accused in jeopardy twice for the same offense. US Const, Am V; Const 1963, art 1, § 15; *Beck*, 510 Mich at 11-12. When the defendant is tried by a jury, "jeopardy generally attaches at the time the jury is selected and sworn." *Beck*, 510 Mich at 12 (quotation marks and citation omitted). "If the trial is concluded prematurely, a retrial for that offense is prohibited unless the defendant consented to the interruption or a mistrial was declared because of a manifest necessity." *Id*. (quotation marks and citation omitted). "An accused is placed in jeopardy as soon as the jury is selected and sworn." *People v Dawson*, 431 Mich 234, 251; 427 NW2d 886 (1988). "Hence, double jeopardy protection attaches before the conclusion of the trial." *Id*. "Where the trial ends before a verdict—where a mistrial is declared—the Double Jeopardy Clause may bar a retrial." *Id*. "The Double Jeopardy clause does not bar all retrials." *Id*. at 252. "One long-recognized instance in which 'manifest necessity' requires the termination of a trial is where the jury fails to agree on a verdict." *People v Thompson*, 424 Mich 118, 123; 379 NW2d 49 (1985), citing *Arizona v Washington*, 434 US 497, 509; 98 S Ct 824; 54 L Ed 2d 717 (1978). Accordingly, because the jury failed to agree upon a verdict in defendant's first trial, the Double Jeopardy Clause did not preclude defendant's retrial for the CSC charges.

Defendant argues that the trial court was required to comply with "the necessary procedures" for declaring a mistrial. He relies on *People v Benton*, 402 Mich 47; 260 NW2d 77 (1977), and *Beck*, 510 Mich 1. In *Benton*, the trial court made a sua sponte finding that the prosecutor improperly impeached a witness in such a manner "that a cautionary instruction would

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

not be efficacious." *Id*. at 54. The trial court therefore declared a mistrial. *Id*. The defendant moved to dismiss the charges "on the ground that he had previously been placed in jeopardy on the same charge," but the trial court denied the motion. *Id*. The defendant was convicted after the second trial. *Id*. Our Supreme Court held:

> A mistrial may only be declared, however, after an on the record consideration and discussion of alternatives with counsel. The wishes of defendant and his counsel can then be ascertained and a full exploration of the alternatives undertaken. In the instant case correct procedures were not followed. Had they been observed the insignificance of the error may have been discovered and proper curative instructions given. Instead, an unnecessary mistrial was declared. We conclude that there was no 'manifest necessity' to declare a mistrial. [*Id*. at 65.]

Similarly, in *Beck*, 510 Mich at 15, our Supreme Court held that a trial court's failure to make a sufficient inquiry regarding the manifest necessity of a mistrial precluded retrial of the same charges.

*Benton*, 402 Mich 47, and *Beck*, 510 Mich 1, did not involve mistrials on grounds of deadlocked juries. They involved trial errors requiring analysis of whether a mistrial was a manifest necessity. Here, in the matter before us, there is no doubt that a deadlocked jury manifestly necessitated a mistrial. This issue is therefore without merit.

## III. AMENDMENT OF INFORMATION/UNANIMITY

In this compound issue, defendant argues that the trial court improperly granted the prosecutor's motion to amend the information. He also raises the related issues that the trial court should have given a unanimity instruction, and that his trial counsel was ineffective in failing to object to the amendment and to request the instruction.

## A. AMENDMENT OF INFORMATION

Defendant argues that the trial court improperly granted the prosecutor's motion to amend the information. MCL 767.76 provides, in pertinent part:

> No indictment shall be quashed, . . . nor shall any conviction be set aside or reversed on account of any defect in form or substance of the indictment, unless the objection to such indictment, specifically stating the defect claimed, be made prior to the commencement of the trial or at such time thereafter as the court shall in its discretion permit.

"All provisions of the law applying to prosecutions upon indictments, . . . shall, in the same manner and to the same extent as near as may be, be applied to informations and all prosecutions and proceedings thereon." MCL 767.2; accord MCR 6.112(A). Defendant failed to preserve this issue by a timely objection. "A trial court's decision to grant or deny a motion to amend an information is reviewed for an abuse of discretion." *People v McGee*, 258 Mich App 683, 686-687; 672 NW2d 191 (2003). The trial court abuses its discretion when it chooses an outcome that falls outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d

231 (2003). Unpreserved issues are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 762-765.

A trial court "may at any time before, during or after trial amend the information in respect to any defect, imperfection, or omission in form or substance or of any variance with the evidence." MCL 767.76. The amendment should be disallowed if it causes unacceptable prejudice to the defendant because of unfair surprise, inadequate notice, or insufficient opportunity to defend. *People v Hunt*, 442 Mich 359, 364; 501 NW2d 151 (1993). "Prejudice occurs when the defendant does not admit guilt and is not given a chance to defend against the crime." *People v Stricklin*, 162 Mich App 623, 633; 413 NW2d 457 (1987). In *Stricklin*, the defendant was charged with four counts of first-degree CSC. *Id*. at 632. At the preliminary examination, the female victim testified that she performed oral sex on the defendant, and that he attempted vaginal and anal intercourse on her. *Id*. There was no testimony that the defendant performed oral sex on the victim. *Id*. At trial, the victim testified that the defendant performed oral sex on her. *Id*. at 632-633. The trial court instructed the jury that the first two counts of the information were based on "the child's having performed oral sex on [the defendant] and his having performed oral sex on her." *Id*. at 633. This Court found that "the trial court's instructions to the jury effectively amended the information against [the defendant] following the close of the proofs." *Id*. This Court concluded that the defendant "was not prejudiced by the amendment in this case[:]"

> [Defendant] was bound over on a charge of first-degree criminal sexual conduct and was convicted of first-degree criminal sexual conduct. While the information was amended to reflect a variance in the type of penetration, defendant was not convicted of a new crime. Nor was defendant deprived of an opportunity to defend against the crime. He defended the original charges on the grounds that his stepdaughter was promiscuous and sexually aggressive. Nothing in the record suggests that he would have presented a different defense at trial if the charge had originally been first-degree criminal sexual conduct involving oral sex with his stepdaughter instead of first-degree criminal sexual conduct involving anal penetration. [*Id*. at 633-634.]

*Stricklin* is analogous to the instant case, in which the information also was amended "to reflect a variance in the type of penetration" rather than a new crime. *Id*. at 633. Indeed, the "variance in the type of penetration" between the original information and the de-facto amended information in *Stricklin* was wider than the variance between the original and amended informations here, which kept the charge of penile penetration of the vagina and anus, but added the alternative of penetration using the finger or other object.

The timing of the prosecutor's motion to amend the information in the instant case also presents a more compelling case for approval of the amendment than the facts in *Stricklin*. In *Stricklin*, the de-facto amendment effected by the trial court's jury instructions came at the end of the trial. *Id*. at 633. In the instant case, the prosecutor moved to amend the information on November 2, 2022, 34 days before the second trial began on December 6, 2022. Defendant thus had sufficient time to plan whether to pursue a defense that would address the prosecutor's theory that GB correctly testified that defendant sexually penetrated her, even if she was mistaken about what body part or object accomplished the penetration. Defendant chose instead to argue that GB was not credible because her description of being penetrated while lying face to face or with her

back toward defendant's front was not plausible. This argument left open the possibility that GB merely misunderstood what defendant was doing to her, but defendant had time to adapt his argument to the amended information and jury instructions. Accordingly, defendant fails to establish that the trial court abused its discretion in permitting the amendment. *McGee*, 258 Mich App at 686-687. He also fails to establish plain error affecting his substantial rights. *Carines*, 460 Mich at 762-765.

## B. INSTRUCTIONAL ERROR

Defendant argues that the trial court should have given a special unanimity instruction. "A party must object or request a given jury instruction to preserve the error for review." *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000); see also MCR 2.512(C); MCL 768.29.

Claims of instructional error are reviewed de novo. *People v Spaulding*, 332 Mich App 638, 652; 957 NW2d 843 (2020). However, the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion. *People v Montague*, 338 Mich App 29, 37; 979 NW2d 406 (2021). Defendant failed to preserve this issue by timely objecting to the omission of a unanimity instruction. This issue is unpreserved, so it is reviewed under the plain-error standard. *Carines*, 460 Mich at 762-765.

"A jury verdict must be unanimous." MCR 6.410(B). "Michigan law provides criminal defendants the right to a unanimous jury verdict." *People v Chelmicki*, 305 Mich App 58, 67; 850 NW2d 612 (2014). "In order to protect a defendant's right to a unanimous verdict, it is the duty of the trial court to properly instruct the jury regarding the unanimity requirement." *Id*. (quotation marks and citation omitted). The trial court can often fulfill this duty by giving a general jury instruction on unanimity, but:

> a specific unanimity instruction may be required in cases in which more than one act is presented as evidence of the actus reus of a single criminal offense and each act is established through materially distinguishable evidence that would lead to juror confusion. [*Id*. at 68 (quotation marks and citation omitted).]

However, when the statute at issue "lists alternative means of committing an offense which in and of themselves do not constitute separate and distinct offenses, jury unanimity is not required with regard to the alternate theory." *Id*. (quotation marks and citation omitted). In contrast, a case that has evidence of more than one act that supports the *actus reus* of a single criminal offense, may require a special unanimity instruction. *Id*.

MCL 750.520b(1)(b) provides that a person is guilty of first-degree CSC if he engages in sexual penetration and the other person is at least 13 years old, but younger than 16 years of age, plus any of six enumerated circumstances. Of these six circumstances, the one pertinent to the instant case is MCL 750.520b(1)(b)(*ii*), "[t]he actor is related to the victim by blood or affinity to the fourth degree[.]" "Sexual penetration" is defined to mean "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r). In *People v Gadomski*, 232 Mich App 24; 592 NW2d 75 (1998),

this Court analyzed the issue of the need for a special unanimity instruction when the charged conduct fits more than one definition of first-degree CSC. The trial court in *Gadomski* instructed the jury that to convict the defendant of first-degree CSC, "it was required to find that defendant engaged in the specific act of sexual penetration alleged by the prosecution and that this act was accompanied by one of three alternative aggravating circumstances." *Id*. at 29. These were: that the assault occurred during the commission of a home invasion, MCL 750.520b(1)(c); that the assault involved aiding and abetting and force or coercion, MCL 750.520b(1)(d)(*ii*); and that the assault caused personal injury to the victim and involved force or coercion, MCL 750.520b(1)(f). *Gadomski*, 232 Mich App at 29. The trial court gave a general unanimity instruction. *Id*. at 29. The defendant argued on appeal that the trial court erred in failing to give a special unanimity instruction. *Id*. He argued that, "because no special unanimity instruction was given, the jury might have unanimously agreed on the general existence of an aggravating circumstance without unanimously agreeing on the existence of any one of the aggravating circumstances in particular." *Id*. This Court held, "Where there is a single sexual penetration, the various aggravating circumstances listed in [MCL 750.520b], constitute alternative means of proving a single CSC I [first-degree] offense, and would not support convictions of separate and distinct CSC I offenses." *Id.* at 31.

In the instant case, the prosecutor did not introduce evidence of multiple, distinct, alternative acts as evidence of the *actus reus* of the charged offense. That is, the prosecutor did not offer evidence that there were instances of penile penetration and other instances of digital penetration. Instead, the prosecutor argued that GB might have been confused about what she saw and felt during the charged instances, given that the incidents occurred in the dark, and that they began while she was asleep. Accordingly, defendant was not entitled to a special unanimity instruction.

## C. INEFFECTIVE ASSISTANCE

Defendant next alleges his counsel was ineffective for failing to object to the amendment of the information and to the trial court's jury instructions.

A claim of ineffective assistance of counsel presents a mixed question of law and fact. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id*. To establish ineffective assistance of counsel, a defendant first must demonstrate that trial counsel's performance fell below an objective standard of reasonableness. *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). "Second, the defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable." *Id*. at 290. "[T]he defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy." *Id*. Generally, when no *Ginther* hearing is held, this Court's review is limited to mistakes apparent on the record. *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

"Failure to raise a futile objection or advance a meritless argument does not constitute ineffective assistance of counsel." *People v Isrow*, 339 Mich App 522, 532; 984 NW2d 528 (2021). As indicated in the analyses of defendant's issues regarding the amendment of the information and the special unanimity instruction, defense counsel's objection to the former and

-7-

request for the latter would have been futile. Therefore, defendant's claim of ineffective assistance of counsel is without merit.

## IV.  INVOLUNTARY CONDUCT

Defendant argues that GB gave unrebutted testimony that defendant was asleep when the assaults occurred; therefore, the trial court should have instructed the jury that defendant could not be convicted for involuntary conduct. He raises related arguments that trial counsel was ineffective in failing to request the instruction and that his conviction was contrary to the great weight of the evidence.

## A.  INVOLUNTARINESS INSTRUCTION

Defendant failed to preserve this issue by requesting the voluntariness instruction. *Sabin*, 242 Mich App at 657. We therefore review for plain error. *Carines*, 460 Mich at 762-765.

"One of the essential roles of the trial court is to present the case to the jury and to instruct it on the applicable law with instructions that include . . . any material issues, defenses, and theories that are supported by the evidence." *People v Craft*, 325 Mich App 598, 606-607; 927 NW2d 708 (2018) (quotation marks and citation omitted). "Further, when a jury instruction is requested on any theories or defenses and is supported by evidence, it must be given to the jury by the trial judge." *People v Mills*, 450 Mich 61, 81; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). "A trial court is required to give a requested instruction, except where the theory is not supported by evidence." *Id*. As noted, this issue is unpreserved. Therefore, defendant must satisfy a plain-error analysis, starting with the first prong of demonstrating that an error occurred. *Beck*, 510 Mich at 27. In other words, defendant must demonstrate that the trial court would have erred if it denied defendant's request for the instruction.

There is no standard criminal jury instruction regarding involuntary physical actions committed while the actor is asleep or in other states of unconsciousness. Generally, to convict the defendant of a crime, both the *mens rea* and *actus reus* must be proven, but, when a crime is a strict-liability offense, only the *actus reus* must be proven. *People v Likine*, 492 Mich 367, 393; 823 NW2d 50 (2012). "Specifically, a strict-liability offense requires the prosecution to prove beyond a reasonable doubt that the defendant committed the prohibited act, regardless of the defendant's intent and regardless of what the defendant actually knew or did not know." *Id*. In common law, a defendant theoretically can defend a strict-liability charge by admitting that he committed the act, but arguing that he acted involuntarily. *Id*. "Examples of involuntary acts that, if proved, provide a defense against the *actus reus* element of a crime include reflexive actions, spasms, seizures or convulsions, and bodily movements occurring while the actor is unconscious or asleep." *Id*. at 393-394 (footnotes omitted). Under MCL 750.520b(2)(b)(*i*) and (*ii*), sexual penetration of a person between the ages of 13 (inclusive) and 16 (not inclusive), who is related to the actor, is a strict liability offense. See *People v Nyx*, 479 Mich 112, 140-141; 734 NW2d 548 (2007) (MARKMAN, J., *concurring*) (stating that "the act of committing sexual penetration with a victim under the age of 16" is a strict-liability offense). Accordingly, if the jury believed that defendant involuntarily committed the assaults in his sleep, and the jury was instructed to acquit defendant if they believed he was asleep and acting involuntarily, the defendant would have been acquitted. The validity and soundness of this syllogism depend on whether Michigan law

recognizes a defense of involuntariness for sexual assaults committed while the actor is asleep, and whether the evidence supported such a "sexsomnia" defense. Our Supreme Court in *Likine*, 492 Mich at 393-394, indicated generally that acts committed in a state of unconsciousness cannot constitute the *actus reus* of a strict-liability defense.

However, Michigan law has not recognized a sexsomnia defense. The trial court therefore did not err in omitting an instruction on involuntary conduct. At a minimum, even if the trial court did err, defendant has not identified any binding authority in Michigan recognizing such a "sexsomnia" defense. Consequently, any error was not "plain," and defendant is not entitled to relief.

## B. INEFFECTIVE ASSISTANCE

Regardless, defendant argues that trial counsel was ineffective in failing to request an instruction on voluntariness. "[D]efense counsel's performance cannot be deemed deficient for failing to advance a novel legal argument." *People v Reed*, 453 Mich 685, 695; 556 NW2d 858 (1996). The absence of clear authority supporting defendant's theory renders it novel. Moreover, given the questionable validity of a sleep defense, defendant fails to establish that failure to request the instruction was an objectively unreasonable error, or that requesting the instruction would have created a reasonable probability of a more favorable outcome. *Armstrong*, 490 Mich at 289-290.

Defendant, significantly, also fails to overcome the strong presumption that counsel's assistance constituted sound trial strategy. *Id*. at 290. The instruction would have undermined defense counsel's strategy of attacking GB's and Michelle's credibility. Defense counsel stated that GB's testimony made no sense because her description of the penetration was unrealistic, because she testified that every incident followed the same pattern, and because she never woke up while her clothing was removed. Defense counsel also argued that Michelle felt hostility and resentment toward defendant, and that she was motivated to find an excuse to divorce him. Pursuing an involuntariness defense would have required defendant to concede that GB truthfully reported the assaults. The assertion that defendant routinely engaged in sexual penetration of his daughter while he was asleep strains credulity, especially when the jury also would have to believe that this extraordinary phenomenon coincidentally happened to a man who regularly shared his daughter's bed for supposedly innocent purposes. Trial counsel did not err in choosing the former strategy. Further, this Court does not "use the benefit of hindsight when assessing counsel's competence." *People v White*, 331 Mich App 144, 149; 951 NW2d 106 (2020) (quotation marks and citation omitted).

## C. GREAT WEIGHT OF THE EVIDENCE

"A verdict is against the great weight of the evidence and a new trial should be granted when the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v Evans*, 335 Mich App 76, 87; 966 NW2d 402 (2020) (quotation marks and citation omitted). "Generally, a verdict is against the great weight of the evidence only when it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *Id*. (quotation marks and citation omitted). "[A]bsent exceptional circumstances, issues of witness credibility are for the jury." *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998).

Defendant argues that the jury's verdict was contrary to the great weight of the evidence because he committed the alleged sexual assaults in his sleep. He emphasizes that GB testified that defendant always appeared to be asleep during the assaults, and that he afterwards showed no signs of acknowledging or remembering what had happened. He argues that the prosecutor failed to rebut this evidence that defendant was asleep. We disagree. Even if GB appeared to believe that defendant was asleep during the incidents, the jury could find that she was confused, deceived, or simply unable to accept that her father consciously abused her. Moreover, although defendant did not expressly state that he did not believe that he assaulted GB while he was asleep, he did not offer somnambulant behavior as an explanation for her accusations. Defendant therefore is not entitled to a new trial on great-weight-of-evidence grounds.

## V. EVIDENCE OF SUICIDE ATTEMPT AND POLICE STANDOFF

Defendant argues that evidence of his suicide attempt and standoff with police should have been excluded under MRE 403.[2] A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *People v Watkins*, 491 Mich 450, 467; 818 NW2d 296 (2012). "[W]hether a rule or statute precludes admission of evidence is a preliminary question of law that this Court reviews de novo." *People v Propp*, 508 Mich 374, 383; 976 NW2d 1 (2021).

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Generally, "[a]ll relevant evidence is admissible . . . ." MRE 402. Even where evidence is considered to be relevant, however, the evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by presentation of cumulative evidence." MRE 403. Notably, MRE 403 does not regulate evidence that is simply "prejudicial" because "[a]ll relevant and material evidence is prejudicial[.]" *People v Sharpe*, 502 Mich 313, 333; 918 NW2d 504 (2018). Rather, "[i]t is only when the probative value is *substantially outweighed* by the danger of unfair prejudice that evidence is excluded." *Mills*, 450 Mich at 75. This involves a two-part test: "First, this Court must decide whether introduction of [the] evidence at trial was unfairly prejudicial. Then, this Court must apply the balancing test and weigh the probativeness or relevance of the evidence against the unfair prejudice." *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011) (quotation marks and citation omitted).

MRE 404(b)(1) permits the introduction of evidence of other wrongful acts if they are offered for a purpose other than to show the defendant's propensity for illegal conduct. Here, the prosecutor offered the evidence to prove defendant's consciousness of guilt. When a party intends to offer evidence of other wrongful acts, the trial court must consider: "(1) whether the evidence is offered for a proper purpose under MRE 404(b), (2) whether the evidence is relevant under MRE 401 and MRE 402, and (3) whether the probative value of the evidence is substantially outweighed by unfair prejudice under MRE 403." *People v Roscoe*, 303 Mich App 633, 645-646; 846 NW2d

---

[2] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxiii (2023). All rules of evidence cited in this opinion refer to the version in effect at the time of trial.

402 (2014); see also *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). Defendant argues that the evidence should have been excluded under MRE 403 because his behavior was caused not by consciousness of guilt, but by despair and fear.

We disagree with defendant's broad contention that his conduct on December 10, 2020, cannot be construed as evidence of anything other than his despair over GB's allegations. Although we have not found published Michigan authority regarding evidence of a suicide attempt as evidence of consciousness of guilt, the United States Court of Appeals for the Sixth Circuit addressed the issue in *United States v Cody*, 498 F3d 582 (CA 6, 2007), and found it admissible.[3] Defendant cites scientific literature that purportedly concludes that persons falsely accused of sex crimes have an increased risk of suicide from fear and depression. However, these studies were not part of the lower court record, and defendant cannot expand the record on appeal. *People v Nix*, 301 Mich App 195, 203; 836 NW2d 224 (2013). Moreover it is a matter of general knowledge that violent and extreme behavior such as defendant's can be prompted by a variety of motives, including consciousness of guilt and despair. Defendant cites no legal authority supporting his assumption that jurors' preconceptions about suicide render such evidence inherently misleading. Defendant's arguments pertain to the weighing and interpretation of evidence, which is a function properly left to the trier of fact, not the appellate court. *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018). We also disagree with defendant's argument that his trial counsel was forced to "educate the jury about counterintuitive behavior," and thereby divert his attention from discrediting the prosecution witnesses. Defense attorneys often must address multiple aspects of a prosecution's case against their clients. Thus, the trial court acted within its discretion when it overruled defendant's objection to the evidence.

Defendant additionally argues that the evidence of his standoff with the police was inflammatory because it focused on how defendant's conduct traumatized the officers who witnessed it, and how it might have further traumatized GB if defendant had died. This did not render the evidence unfairly prejudicial. The effect of defendant's behavior on GB and on the officers who had to respond to it was relevant to countering defendant's assertion that he attempted suicide to sacrifice himself for his family's benefit.

Defendant also suggests that evidence regarding the standoff implicated his Fifth Amendment right to silence. Defendant argues that the prosecutor implied that the jury should find him guilty because he exercised his right to silence by refusing to answer the door. He did not raise this issue in the trial court. Defendant's argument invokes the principle that a prosecutor may not use a defendant's exercise of the right to silence as proof of guilt. Defendant correctly states that a prosecutor may not comment on a defendant's postarrest, post-*Miranda*-warning silence.[4] *People v Clary*, 494 Mich 260, 271; 833 NW2d 308 (2013). A prosecutor also may not imply in closing argument that the defendant must prove something or present a reasonable

---

[3] Federal caselaw is not binding on this Court, but it may serve as useful guidance in applying analogous state law. *People v Rogers*, 338 Mich App 312, 326-327; 979 NW2d 747 (2021).

[4] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

explanation for damaging evidence because such an argument tends to shift the burden of proof. *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010).

We find no violations of these principles. None of the witnesses testified regarding defendant's refusal to speak. The officers' testimony established the events that followed GB's disclosure of the abuse. Officer Jillian Mahlmeister explained that the purpose of the officers' entry into the house was not to arrest or interrogate defendant, but to check his safety after Michelle reported that he expressed suicidal ideations.

We also find no merit to defendant's argument that the trial court's jury instruction equated suicide with "running or hiding from the police." The instruction specifically stated that evidence of suicidal acts do not prove guilt, and that a person may flee for innocent reasons such as fear. The instruction drew an analogy between attempted suicide and flight, but this analogy was consistent with *Cody*, 498 F3d at 591.

Defendant states that his trial counsel was ineffective because he "failed to educate the trial court" about the minimal evidentiary value of his conduct on December 10, 2020. The unstated premise of defendant's argument is that his motives on December 10, 2020, objectively and exclusively stemmed from either the horrifying discovery that he raped his daughter in his sleep or his fear that false accusations would destroy his life and break up his family. However, defendant's motives are not a matter of empirical verification, but the subject of the fact finders' interpretation and inferences. Defendant's assertions that trial counsel made an objectively unreasonable choice in failing to "educate" the trial court are thus unfounded.

## VI. SENTENCING

### A. GUIDELINES SCORING

Defendant argues that the trial court erred in scoring Offense Variable (OV) 10 and OV 19. In claims that a trial court improperly scored sentencing guidelines, the trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

"Michigan's sentencing guidelines are now advisory only, but trial courts must still consult the guidelines and take them into account during sentencing." *People v Teike*, 348 Mich App 520, 538; 19 NW3d 733 (2023). "Appellate courts are no longer required to affirm within-guidelines sentences absent an error in the sentencing guidelines scoring or inaccurate information relied on by the trial court in sentencing." *Id*. A defendant is entitled to resentencing if there is a scoring error that alters the defendant's recommended minimum sentence range under the guidelines. *People v Francisco*, 474 Mich 82, 89; 711 NW2d 44 (2006). A sentence is not valid if it is based on inaccurate information. *Id*. at 88-89. A scoring error that does not affect the guidelines range is harmless and does not require resentencing. *Id*. at 91-92.

Defendant's score of 15 points for OV 10, exploitation off a vulnerable victim, is the proper score when "[p]redatory conduct was involved." MCL 777.40(1)(a). " 'Predatory conduct' means

preoffense conduct directed at a victim, or a law enforcement officer posing as a potential victim, for the primary purpose of victimization." MCL 777.40(3)(a). Here, defendant's conduct of regularly sleeping in GB's bed from the time she was a young child is more than sufficient to constitute "predatory conduct." Defendant argues that there was no preoffense conduct because he was asleep during the assaults. As we concluded above, however, a trier of fact could find that defendant was awake and conscious during the assault. Defendant's related arguments regarding instructional error and ineffective assistance are without merit. Accordingly, the evidence was sufficient to support a score of 15 points.

MCL 777.49 governs OV 19, for "threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services." MCL 777.49. OV 19 requires 15 points when "[t]he offender used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services." MCL 777.49(b). The probation department originally scored 15 points for OV 19, but the trial court reduced the score to 10 points, in which "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice, or directly or indirectly violated a personal protection order." MCL 777.49(c).

Defendant argues that he did not interfere with the administration of justice because the police had no warrant and were not investigating a crime when they came to the house in Royal Oak. "The plain and ordinary meaning of 'interfere' " as used in this statute "is 'to come into opposition or collision so as to hamper, hinder, or obstruct someone or something[.]' " *People v Hershey*, 303 Mich App 330, 342-343; 844 NW2d 127 (2013), quoting *Random House Webster's College Dictionary* (2005). Additionally, "OV 19 is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." *People v Sours*, 315 Mich App 346, 349; 890 NW2d 401 (2016). The police were lawfully conducting a welfare check because Michelle reported that defendant expressed suicidal ideations. Defendant could have simply shown himself to the officers; instead he barricaded himself in the basement, causing legitimate concern that he would shoot the officers. Although defendant maintains that he never intended to harm anyone other than himself in the standoff, defendant's after-the-fact, self-serving explanation does not negate evidence that the officers' fears were well-established. Thus, the evidence was sufficient to sustain the 10-point score for OV 19.

## B. PSIR ERRORS

Defendant argues that his PSIR contained misinformation. A trial court's response to a defendant's claim of inaccurate information in the PSIR is reviewed for abuse of discretion. *People v Lucey*, 287 Mich App 267, 275; 787 NW2d 133 (2010).

At sentencing, the trial court must allow each party "an opportunity to explain, or challenge the accuracy or relevancy of, any information in the presentence report, and resolve any challenges in accordance with the procedure set forth in subrule [MCR 6.425](D)(2)." MCR 6.425(D)(1)(b). MCR 6.425(D)(2)(a) provides:

> If any information in the presentence report is challenged, the court must allow the parties to be heard regarding the challenge, and make a finding with

respect to the challenge or determine that a finding is unnecessary because it will not take the challenged information into account in sentencing. If the court finds merit in the challenge, determines that it will not take the challenged information into account in sentencing, or otherwise determines that the report should be corrected, it must order the probation officer to correct the report. If ordered to correct the report, the probation officer must provide defendant's lawyer with an opportunity to review the corrected report before it is sent to the Department of Corrections, certify that the report has been corrected, and ensure that no prior version of the report is used for classification, programming, or parole purposes.

See also MCL 771.14(6).

"It is presumed that unchallenged information in the PSIR is accurate, and a judge is entitled to rely on the information unless a defendant raises an effective challenge." *People v Maben*, 313 Mich App 545, 553; 884 NW2d 314 (2015). "When information is challenged, the sentencing court has wide latitude in how to respond to the challenged information." *Id*. "If the court finds the challenged information inaccurate or irrelevant, it must strike that information from the PSIR before sending the report to the Department of Corrections." *Id*. at 554 (quotation marks and citation omitted). Resentencing is not required if the trial court did not rely on the challenged information in sentencing. *People v Harmon*, 248 Mich App 522, 533; 640 NW2d 314 (2001).

Defendant argues that the PSIR states that Michelle told the police that defendant made inculpatory statements, without stating that Michelle later admitted that she gave false information. However, the PSIR does not say that these statements were truthful, but merely indicates that she made them to the police. Defendant states that the PSIR wrongfully included a victim's impact statement by his son. We agree that defendant's son was not a victim with the right to give an impact statement under MCL 780.752(m), but defendant cites no authority that prohibits inclusion of additional victim's impact statements.

Defendant states that the PSIR states that the prosecutor sought restitution for Michelle and the owner of the house where the standoff occurred. The prosecutor withdrew these requests at the sentencing hearing. We agree that the PSIR should be corrected by striking the restitution information. We remand to the trial court for that purpose.

## VII. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional issues in a Standard 4 brief he filed *in propria persona*.

## A. REDACTED VIDEO

At the second trial, the prosecutor played a redacted video of defendant's testimony from the first trial. Defense counsel agreed to the redaction on the record. "When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (citation and quotation marks omitted). This issue is therefore waived.

Defendant also argues that his trial counsel was ineffective in agreeing to the redaction. The premise of defendant's argument is that the last page of the redacted section in the transcript ended midsentence, leaving only the last words of the sentence, which suggested that defendant was unconcerned about a past suicide attempt made by GB. The record does not indicate exactly where the audio recording was unmuted when it was played for the jury. Assuming that the jury heard the last part of the sentence, it is speculative to infer that the jurors connected the dots and understood that the muted testimony disclosed GB's prior suicide attempt and raised the question of whether defendant responded appropriately. Moreover, the trial court instructed the jury to disregard redacted testimony. Jurors are presumed to follow their instructions. *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020). With respect to defendant's ineffective assistance claim, the record does not establish that trial counsel made an objectively unreasonable error in failing to tailor the redaction to eliminate the suggestion of a previous suicide attempt. It also does not establish a reasonable probability that the purported error affected the outcome of trial. *Armstrong*, 490 Mich at 289-290. This error is therefore without merit.

## B. PROSECUTORIAL ERROR

Defendant raises various claims of prosecutorial error. "To preserve a claim of prosecutorial error,[5] a defendant must timely and specifically challenge the prosecutor's statements or conduct." *People v Thurmond*, 348 Mich App 715, 735; 20 NW3d 311 (2023). Defendant acknowledges that he failed to preserve these claims. The test for prosecutorial error is whether the defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). This Court reviews claims of prosecutorial error case by case, reviewing the record as a whole and considering the prosecution's comments in their proper context. *Id*. at 64. "The propriety of a prosecutor's remarks depends on all the facts of the case." *Id*. (quotation marks and citation omitted). "Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *People v Clark*, 330 Mich App 392, 433; 948 NW2d 604 (2019).

Defendant argues that the prosecutor improperly vouched for GB's credibility when he offered an explanation for implausible or inconsistent aspects of her testimony, namely that defendant penetrated her vagina and anus with his finger. "[A] prosecutor may not vouch for the credibility of his witnesses by implying that he has some special knowledge of their truthfulness." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). However, the substance of defendant's argument is not that the prosecutor implied to have special knowledge of GB's truthfulness, but that the prosecutor recharacterized or misrepresented GB's testimony to make it more plausible. Defendant emphasizes that GB never testified that defendant penetrated her with any body part or object other than his penis, but the prosecutor argued that the jury could find that the penetration was accomplished with a finger or object.

---

[5] This Court prefers the term "prosecutorial error" in place of "prosecutorial misconduct" except for "those extreme—and thankfully rare—instances where a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct." *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015).

The prosecutor is not permitted to argue facts not in evidence or to mischaracterize the evidence, but the prosecutor is free to argue all reasonable inferences that arise from the evidence. *People v Anderson*, 331 Mich App 552, 565; 953 NW2d 451 (2020). The prosecutor's argument regarding penetration by finger or object was drawn from reasonable inferences from the evidence. It was reasonable to infer that a 15-year-old girl would know enough about sexual intercourse to recognize that her anus and vagina were being penetrated, but not enough to understand exactly how the penetration was accomplished. Additionally, GB testified that the assaults always happened when it was dark, so she would not have been able to see what caused the penetration. The statement was within the bounds of proper argumentation. With respect to defendant's related claim of ineffective assistance, "[f]ailure to raise a futile objection or advance a meritless argument does not constitute ineffective assistance of counsel." *Isrow*, 339 Mich App at 532. Defendant's claims of prosecutorial error and ineffective assistance are therefore without merit.

## C. BODYCAM VIDEO

Defendant states that the prosecutor failed to disclose the video recording from the bodycam of an officer who was present during the December 10, 2020 standoff. He argues that the nondisclosure may have violated the prosecutor's duty to disclose exculpatory evidence under *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). He requests a remand for an evidentiary hearing regarding the prosecutor's failure to obtain and disclose the video. He also states that he was denied the effective assistance of counsel because trial counsel did not pursue sanctions under MCR 6.201(J). Alleged *Brady* violations are reviewed de novo. *People v Christian*, 510 Mich 52, 75; 987 NW2d 29 (2022). Unpreserved constitutional issues are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 762-765.

"Defendants have a due process right to obtain evidence in the possession of the prosecutor if it is favorable to the accused and material to guilt or punishment." *People v Stanaway,* 446 Mich 643, 666; 521 NW2d 557 (1994), accord *Brady*, 373 US at 87. Generally, due process does not require the prosecutor to seek and find exculpatory evidence or evidence that is favorable to the defendant, but an individual prosecutor has a duty " 'to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.' " *People v Dimambro*, 318 Mich App 204, 213; 897 NW2d 233 (2016), quoting *Kyles v Whitley*, 514 US 419, 437; 115 S Ct 1555; 131 L Ed 2d 490 (1995).

"To establish a *Brady* violation, a defendant must show that: (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *Christian*, 510 Mich at 76 (quotation marks and citation omitted). "To establish that exculpatory evidence is material, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. (quotation marks and citation omitted). "A reasonable probability means a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citation omitted). However, a defendant is not required to demonstrate by a preponderance of the evidence that disclosure of the suppressed evidence would have resulted in acquittal. *Id*. "Rather, the relevant question is whether the defendant received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id*. (quotation marks and citation omitted).

Defendant did not raise the *Brady* issue in the trial court, or in his motion for remand, so there is no record to provide any basis for assessing the materiality of the bodycam video or the prosecutor's knowledge of the video or attempts to obtain it. The bodycam video is relevant to determining what happened in the Royal Oak house during defendant's standoff with police officers, but defendant's testimony regarding the standoff generally agreed with the officers' testimony that he hid himself with a gun until he was discovered unconscious. The standoff testimony is significant to defendant's appeal, but defendant's arguments pertain to his state of mind during the incident and the officers' interpretations of and reactions to his behavior. A bodycam video cannot reveal defendant's state of mind or motivations for holding a weapon and refusing to obey commands. Defendant's suggestions that the prosecutor failed to disclose the video because it contained exculpatory evidence is entirely speculative. Defendant thus fails to demonstrate plain error with respect to his due-process violation claim. *Beck*, 510 Mich at 27. Therefore, defendant cannot show "that, but for counsel's deficient performance, a different result would have been reasonably probable." *Armstrong*, 490 Mich at 290.

Defendant also argues that the prosecutor violated MCR 6.201, which governs discovery in criminal proceedings. MCR 6.201(B)(1) requires that the prosecuting attorney provide to the defendant any exculpatory information or evidence known to the prosecutor. MCR 6.201(J) authorizes the trial court to impose "appropriate sanctions" against a party who has failed to comply with discovery requirements. Defendant has not established a violation of MCR 6.201(B). Accordingly, sanctions were unnecessary.

## D. IMPROPER ARGUMENT

In his closing argument, the prosecutor remarked that GB had no special reason to lie. He stated that he looked forward to hearing what trial counsel would say. Trial counsel stated in his argument that defendant was not obligated to prove his innocence or to prove "why any of this came out." In rebuttal, the prosecutor stated that it was "100% true" that defendant did not need to prove anything. He also reiterated that GB had no "special reason to lie," and that defendant "doesn't even have a theory about it." Defendant argues that these statements improperly shifted the burden of proof to him.

"A prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v Savage*, 327 Mich App 604, 616; 935 NW2d 69 (2019) (quotation marks and citation omitted). Read in context, the prosecutor's remarks were a response to defendant's argument that too many aspects of the prosecutor's case did not make sense. Moreover, the prosecutor mitigated any improper insinuation by affirming defendant's argument that he did not have to prove anything. Finally, the trial court instructed the jury that defendant was "not required to prove his innocence or do anything." Jurors are presumed to follow their instructions. *Zitka*, 335 Mich App at 348. With respect to defendant's claim of ineffective assistance, if defense counsel had objected, the trial court would likely have given a curative instruction. A curative instruction would have been partially redundant of the trial court's general instructions, and therefore would have been unlikely to result in a more favorable outcome for defendant. Defendant's claims of prosecutorial error and ineffective assistance are therefore without merit.

## E.  EVIDENTIARY ERRORS

Defendant argues that the trial court improperly admitted hearsay testimony from Michelle and Officer Mahlmeister.  "Hearsay 'is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.' " *People v Smith*, 336 Mich App 79, 110; 969 NW2d 548 (2021), quoting MRE 801(c).  "Under MRE 802, hearsay is not admissible unless it falls under one of the hearsay exceptions set forth in the Michigan Rules of Evidence."  *People v Musser*, 494 Mich 337, 350; 835 NW2d 319 (2013) (quotation marks and citation omitted).  "An out-of-court statement introduced to show its effect on a listener, as opposed to proving the truth of the matter asserted, does not constitute hearsay under MRE 801(c)."  *People v Gaines*, 306 Mich App 289, 306-307; 856 NW2d 222 (2014).

Regarding Michelle's testimony, defendant states that she testified regarding GB's statements about the alleged crime.  We find one instance in which Michelle started to repeat something that a police officer said, but trial counsel promptly objected, and the trial court sustained the objection.  Defendant's hearsay argument is without merit with respect to Michelle's testimony.

Officer Mahlmeister testified that when she told Michelle that defendant was not answering the door at the Royal Oak house, Michelle "stated that on the way to CARE House, they spoke to him over the phone and he made some type of comment that the family was better off without him."  Defendant objected on grounds that the statement was double hearsay, but the prosecutor argued that the statement was introduced to show the "effect on the listener to explain" Officer Mahlmeister's reasons for her actions.  The trial court agreed, and overruled defendant's objection.  The trial court did not err in admitting the statement to explain why the officers entered the house and approached defendant.

Defendant also argues that the prosecutor was argumentative with him during cross-examination.  He argues that the questions suggested that he did not care about how his suicide would affect his family.  He states that these questions were an appeal to the jury to convict him because he was a bad person, instead of on the evidence.  However, trial counsel objected, and the trial court sustained the objection.  The trial court also held a bench conference, apparently to correct the prosecutor's tactics.

Defendant argues that at the first trial, the prosecutor showed him a copy of the e-mail exchanges between GB and her counselor, but failed to establish the authenticity of the copy.  This refers to the testimony at the first trial that was redacted when the video of defendant's testimony was played at the second trial.  This testimony was not presented at the second trial.  Any potential effect of this alleged error was terminated when the first trial ended in a hung jury.

Defendant argues that if individual errors are not sufficient to constitute error requiring reversal, his convictions should be reversed on grounds of cumulative error.  "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted."  *People v Lowrey*, 342 Mich App 99, 119; 993 NW2d 62 (2022) (quotation marks and citation omitted).  However, this

case does not involve multiple errors.  Accordingly, reversal on the basis of cumulative error is not warranted.  See *People v LeBlanc*, 465 Mich 575, 591-592; 640 NW2d 246 (2002).

## VIII.  CONCLUSION

Defendant's convictions and sentences are affirmed.  We remand to the trial court for correction of the PSIR.  We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Michael J. Riordan
/s/ Mariam S. Bazzi